HOULIHAN v. PREFERRED ACCIDENT INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department.   July 8, 1908.)

INSURANCE — ACCIDENT POLICY — CONSTRUCTION — RISKS INCURRED — DEATH "CAUSED BY THE BURNING OF A BUILDING."

   An accident policy, insuring against accidents "caused by the burning of a building" while the insured is therein, insures against accidents caused by fire in a building; and hence a death caused by the burning of the contents of a room in a building was "caused by the burning of a building," within the terms of such policy, and it is immaterial whether more or less of the building itself was actually consumed.

Appeal from Trial Term.

Action by James J. Houlihan against the Preferred Accident Insurance Company of New York. From a judgment for defendant, entered on a directed verdict, plaintiff appeals. Reversed.

Argued before INGRAHAM, McLAUGHLIN, CLARKE, HOUGHTON, and SCOTT, JJ.

Charles W. Dayton, Jr. (Howard Chipp, of counsel, and Edward D. Bryde, on the brief), for appellant.

Tallmadge W. Foster, for respondent.

CLARKE, J.   The defendant issued its policy, entitled the "Advanced $10,000 Combination Accident Policy, No. XI4,208," to James J. Houlihan, the plaintiff, called in said policy the "insured." The insured's name was Mrs. J. B. Manning, a sister of the plaintiff, of the age of 50 years. The policy provided that it would insure the insured against disability or death resulting directly and independently

of any and all other causes from bodily injury effected solely through external, violent, and accidental means. Part X, under which the plaintiff claims, is entitled "Beneficiary insurance," and provides:

"Provided, always, * * * this policy shall, in consideration of the premium, also insure * * * the person so named as beneficiary against the effect of external, violent, and accidental injury * * * (3) if caused by the burning of a building while the said person is therein, to wit, if such injury so sustained shall be independently of all other causes and within 90 days of such accident result in any one of the following losses: * * * For loss of life, the death benefit shall be paid to the insured. For loss of life, $7,500."

It is conceded that Mrs. Manning died as the result of a fire which occurred in the room which she was occupying in the building known as 253 West Forty-Fourth street, in the city of New York, and that the proper proofs, under the terms of the policy, were duly presented. The sole contention is that the death was not caused by the burning of a building while the said person was therein. The evidence establishes that a fire occurred in the room in the building which Mrs. Manning occupied; that the bedclothes and mattresses of the bed upon which she slept were burned; that her nightclothes were burned from her, and her clothes hanging in the room were burned; that the door was blistered; that the matting and rugs were covered with soot and water; that the room was filled with smoke; that the fire therein was seen from the basement; that it required a number of pitchers of water to put out the flames, and as a result two days thereafter Mrs. Manning died. The defendant asked for a direction of the verdict upon the ground that the plaintiff had failed to prove that there was a burning of the building, within the meaning of the policy; and, the motion having been granted, plaintiff appeals.

This policy purported to insure against injury resulting from accident. Its very title is "Advanced $10,000 Combination Accident Policy." It insured against external, violent, and accidental injury, if caused by the disablement or wrecking of a railway passenger car; (2) if caused by the wrecking or foundering of a steam vessel; (3) if caused by the burning of a building while the said person is therein. "No rule in the interpretation of a policy is more fully established, or more imperative and controlling, than that which declares that in all cases it must be liberally construed in favor of the insured, so as not to defeat, without a plain necessity, his claim to the indemnity which, in making the insurance, it was his object to secure. When the words are without violence susceptible of two interpretations, that which will sustain his claim and cover the loss must in preference be adopted. May on Insurance, § 175"—quoted with approval in Rickerson v. Hartford Fire Insurance Company, 149 N. Y. 307, 43 N. E. 856. In Marshall v. Com. Travelers' Mut. Ass'n, 170 N. Y. 434, 63 N. E. 446, the court said:

"If, however, there is any doubt or uncertainty as to the meaning of this policy, it must be resolved in favor of the plaintiff, upon the well-recognized ground that it was the defendant who prepared it, and, if any doubt exists as to the meaning of the terms employed, the defendant is responsible for it, as the language was wholly its own."

These few citations illustrate the uniform attitude of the court in dealing with policies of insurance. It is to obtain from the language thereof the fair and reasonable intent of the parties, and, if the language be ambiguous, to resolve the doubt in favor of the insured. What this policy means is to insure against accident caused by fire in a building. The room was on fire; that is, various articles were on fire in the room, and the room was in a building. It cannot be that a building must be entirely burned down in order to enable an insured to recover. It must be that what was attempted to be guarded against was injury in the insured resulting from fire while in a building. In Northrup v. Railway Passenger Assur. Co., 43 N. Y. 516, 3 Am. Rep. 724, the defendant, by the terms of its policy, agreed to pay the assured or her legal representatives the sum of $5,000 in the event of her death from personal injury when caused by any accident when traveling by private or public conveyances provided for the transportation of passengers in the United States. Mrs. Northrup started from her residence in Rathbone, Steuben county, to visit friends in Madison county. The party traveled in the ordinary manner and by a usual route on the Erie Railway to Watkins, at the head of Seneca Lake, and there took a steamboat to Geneva, where they arrived in the evening. The station of the New York Central Railroad at Geneva was about 70 rods distant from the steamboat landing, and persons arriving by steamer generally pass from the wharf through the streets of Geneva to the railroad station on foot. She started with her friends to walk, and while in the usual route slipped and fell on the sidewalk, and in the fall the back of her head came in contact with the frozen snow and earth, and she sustained serious injuries thereby, from which she died. Grover, J., said:

"It must be conceded that the injury received by the plaintiff's intestate does not come within the strict literal words of the contract of assurance. * * * The policy must be construed so as to carry into effect the intention of the parties, so far as such intention can be determined from the language used, construed in the light of well-known extrinsic facts, which must be presumed to have been known to the contracting parties at the time of making the contract, and in reference to which it was entered into. * * * Can it be said that a passenger is not traveling, within the meaning of this contract by public conveyance, while passing from one train to go on board another in the actual prosecution of his journey; or, for further illustration, can this be said of a passenger from New York to Dunkirk by the Erie, while going from the ferryboat at Jersey City to get on board of the train at that place? I think that such passenger, within the meaning of this contract, and also within the fair construction of the language, is a traveler by public conveyance all the way from New York to Dunkirk, although he may walk a short distance from the ferryboat to the train at Jersey City, or from one train to another, when such changes are made at intermediate stations. An injury received while so necessarily walking in the actual prosecution of the journey is received while traveling by public conveyance within the meaning of the policy, as such walking is the actual and necessary accompaniment of such travel. * * * It follows that the judgment appealed from must be reversed."

If walking 70 rods upon the sidewalk of a village street is to be construed as traveling in a public conveyance for the transportation of passengers, it would seem to follow that a death caused by the burning of the contents of a room in a building may fairly be construed

to be caused by the burning of a building. Death by accidental fire in a building was the crucial test of the defendant's liability, not whether more or less of the building itself was actually consumed.

The judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

INGRAHAM, HOUGHTON, and SCOTT, JJ., concur.

McLAUGHLIN, J. (concurring). I think it can fairly be said, under the terms of the policy in question, that Mrs. Manning lost her life by "the burning of a building while" she was therein. Not only were the bedclothes and the mattress of the bed in which she slept burned, including her own clothing, but the woodwork in the room was charred and burned more or less, and, had not the fire been timely discovered and quickly extinguished, the whole building would have been involved, and probably destroyed.

For these reasons, I concur in the conclusion reached by Mr. Justice CLARKE.