BLITZKRIEG AMUSEMENT CORPORATION, Landlord, *v.* RUBENSTEIN BROS. DRINKS, INC., Tenant.*

Municipal Court of the City of New York, Borough of Manhattan, May 22, 1945.

*Leo Eckman* for landlord.

*Sidney Holtzman* for tenant.

WAHL, J. This is a summary proceeding instituted by the petitioner for possession of a portion of the space heretofore leased to the tenant. The grounds advanced for such relief are, in substance, that the tenant holds over and continues in possession of such space after due notice and without permis-

*See, also, *Trade Accessories* v. *Bellet,* 184 Misc. 962.—[REP.

sion of said petitioner; further, that the petitioner owned and acquired an enforcible right to take possession of the premises in question on or before the effective date of the act relating to the regulation, control and stabilization of rents, chapter 314 of the New York Laws of 1945, covering premises used or occupied as business space, enacted on March 28, 1945. It is further alleged that the petitioner seeks the premises for its immediate and personal use and that it occupies premises immediately adjoining that of the tenant and seeks to enlarge its own space so that another place of ingress and egress will be provided thereby.

The tenant has denied the material portions of the petition and specifically alleges that the petitioner does not seek possession of the space in good faith.

On February 18, 1944, the Blitzkrieg Amusement Corporation, herein called the lessee-landlord, a domestic corporation, entered into a lease in writing whereby the tenant, Rubenstein Bros. Drinks, Inc., a domestic corporation, leased from the petitioner, the lessee-landlord, premises at 701 Seventh Avenue, at an annual rental of $15,900, payable in equal, monthly payments, in advance on the first day of each and every month of the said term. The premises were to be used and occupied for the sale of soft drinks, etc. The lease was for a term of fifteen months, commencing March 1, 1944, and terminating on the 31st day of July, 1945.

Paragraph 32 of the said agreement of lease describes that portion of the premises leased to the tenant as follows: " From the point beginning at 47th Street and 7th Avenue running seven feet north along Seventh Avenue including the pillar at the corner; thence twelve feet nine inches east parallel with the 47th Street side; at this point a straight wall of a depth not exceeding seven feet shall be erected by the tenant to extend to the 47th Street side of the said arcade at a point not exceeding fifteen feet four inches from the corner of the store at Seventh Avenue and Forty-seventh Street; thence along the 47th Street side of the said premises westward fifteen feet four inches from the point and place of beginning."

Under the said agreement of lease, it is provided by paragraph 34: " It is expressly agreed by and between the parties hereto that in the event the landlord needs forty (40) inches of the space on the 47th Street side of the demised premises which forty (40) inches shall be the most easterly forty (40) inches, then upon giving one weeks notice in writing addressed to the tenant at the premises, of its intention, the tenant shall

surrender the said forty (40) inches. In the event the landlord exercises its right under this paragraph, then the landlord agrees that at its own cost and expense to remove the present partition and to erect and install a partition at a place in the premises after deducting the said forty (40) inches. In that event the rent reserved herein shall be reduced by the sum of Seventy-five ($75.00) dollars per month, from the time of the exercise of the landlord's right.''

On April 9, 1945, the petitioner, by registered mail, advised the tenant it chose to exercise its right under the said paragraph 34, and requested the surrender of the said forty inches.

The present owner of the building described as a large office building is not the petitioner herein. The Blitzkrieg Amusement Corporation, some time prior to February 18, 1944, leased from the owner of the building a store in said building, consisting of space of about thirty-five feet on Seventh Avenue and about twenty-five feet in depth, at an annual rental of $38,400 per annum. Part of this space occupied by the Blitzkrieg Amusement Corporation is leased to the tenant herein and to another tenant; and the remaining portion of the space is utilized by the petitioner for the purpose of conducting an amusement center containing various automatic machines and other conveniences for diversion.

This court, since January 24, 1945, upon the enactment of the so-called Commercial Rent Law (L. 1945, ch. 3) known as the Stephens Bill, and amendments thereto enacted March 28, 1945 (L. 1945, ch. 315), has had a number of cases involving the same point, and since the enactment of the statute under review, sometimes known as the Di Constanzo Bill (L. 1945, ch. 314), these cases have increased in volume. I have expressed my opinion on the subject from the bench on a number of occasions, and have now concluded it to be advisable once and for all to settle this question in order to prevent unnecessary litigation with its resultant expense and loss of time to all concerned.

Therefore the issue presented herein is the applicability of subdivision (d) of section 8 of chapter 314 of the New York Laws of 1945 to this proceeding.

In September, 1944, the tenant herein, without the knowledge of the petitioner, executed a lease with the owner of the building for the entire premises occupied by the lessee-landlord, effective upon the expiration of the lease now held by the Blitzkrieg Amusement Corporation. The expiration date is July 31, 1945. The new lease is at an annual rental of $52,000,

an increase of about $14,000 over the rental paid by the lessee-landlord for the same premises.

There is some proof that upon ascertaining that the tenant herein had obtained such lease covering the space heretofore rented by the petitioner, the president of the petitioner corporation indicated her strong disapproval and intimated retaliation.

The petitioner insists that there is urgent need of this forty inches of space so it can provide another entrance on 47th Street. The principal witness who appeared on behalf of the petitioner corporation and who was the president thereof admitted on the witness stand that the summer of 1944 was extremely warm and that she was compelled to use fans and other means for ventilation, but did not then deem it essential to request the surrender of the forty inches.

Upon all the facts adduced upon the trial, the court is inclined to believe that the petitioner did not establish that it seeks the space in good faith. The petitioner has advanced the argument that as long as the forty inches of space will be used for the purpose it proposes, the good faith essential under the act is established. With this we cannot agree. " Good faith " is an adverbial phrase that qualifies the verb. Hence the seeking or the desire must be based on an honesty of intention. All the facts surrounding the desire are relevant to determine the existence of good faith. The good faith shown by the lessee-landlord is not, to put it mildly, unattended by suspicious circumstances. To eliminate any doubt in the mind of the attorney for the petitioner, he is referred to the case of *Marks* v. *Gallagher* (184 Misc. 358) wherein good faith was in issue. However, there is no need of determining this proceeding on this precise point for even assuming the existence of good faith on the part of Blitzkrieg Amusement Corporation, the lessee-landlord herein, it still has to hurdle an obstacle of greater insurmountability. This entails the question whether a lessee-landlord such as the petitioner herein has the right to institute this proceeding.

In my effort to ascertain the intent of the Legislature, I have spoken to a number of legislators and to others who had some part in the enactment of this statute and the companion statute known as the Commercial Rent Law, chapter 3 of the Laws of 1945 and amendments thereto. The latter statute has a similar provision, same paragraph and subdivision, namely, " subdivision (d) of section 8 ". I sought enlightenment, but obtained remarkable diversity of opinion and conjecture, and therefore

the need for this attempt at clarification. If the solons of this State are inclined to accept Bacon's precept concerning the judiciary, "*Jus dicere, et non jus dare*", then it behooves them to be less artless in the drawing of legislation, however needful and urgent.

Section 8 of chapter 314 provides as follows: " So long as the tenant continues to pay the rent to which the landlord is entitled, under the provisions of this act, no tenant shall be removed from any business space, by action or proceeding to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and notwithstanding the issuance of any order to dispossess, warrant or process prior to the effective date of this act, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which is inconsistent with any of the provisions of this act; unless: * * *."

Subdivision (d) of the said section is as follows: " The landlord owned or acquired an enforceable right to buy or take possession of the building on or before the effective date of this act and seeks in good faith to recover possession of the business space for his immediate and personal use; or possession is sought by a person who acquires title to the building subsequent to the effective date of this act, and who likewise seeks in good faith to recover possession of the business space for his immediate and personal use; provided, however, that in either such event, such person shall have an equity in the property of not less than twenty-five per centum of the purchase price; and provided, further, that nothing in this subdivision contained shall authorize the dispossession of a tenant during the term of his lease by his landlord or by any such subsequent purchaser unless by the terms of the lease the privilege is reserved to terminate the lease upon sale of the building; and provided further that no landlord shall be entitled to invoke the provisions of this subdivision unless he shall possess an interest of not less than fifty per centum of the whole investment in the business which he proposes to carry on in such space."

The landlord contends that as it comes within the classification of " landlord " as defined in subdivision (d) of section 2 of chapter 314 of the Laws of 1945, and as it has the right to take possession of the business space in question before the

effective date of the act, it was entitled to maintain this summary proceeding and recover possession of the space in question, providing it seeks to recover possession for its personal and immediate use, it having an interest of more than 50% in the business which it now conducts and proposes to carry on in the space in question. This contention is sound as far as it goes, but the fault I find with it is that it does not go far enough.

It is true that the petitioner is a " landlord " and the defendant is its " tenant ", for " as between the *original lessee* and *his lessee* or transferee, * * * if the parties intend a lease, the relation of landlord and tenant * * * will arise between them." (*Stewart* v. *Long Island R. R. Co.*, 102 N. Y. 601, 608; *O'Connell* v. *Sugar Products Co.*, 114 Misc. 540.) It is also true that prior to March 28, 1945, the petitioner herein was entitled to maintain summary proceedings to recover possession of this space and need show nothing more than the termination of the tenancy or notice to surrender and subsequent holding over and some reversionary interest in itself. However, chapter 314 of the Laws of 1945 has modified this right, and before this petitioner may recover the possession of these premises, it must meet the literal requirements of the exceptions contained in section 8 of the act, as the tenant has offered and is willing to continue to pay the rent to the landlord. The primary purpose of the act was to protect tenants in possession at the time the act became effective and must be liberally construed in their favor.

Counsel for the petitioner argues that the word " building " in subdivision (d) of section 8 is synonymous with " business space ", or, in any event, " building " means either the entire building or a part or parts thereof. He has cited no authority for such a proposition. However, the court has found a number of cases wherein the word " building " was sufficient to describe a part of a house. (See *Easthampton* v. *Hill*, 162 Mass. 302.) In *Pownall* v. *Dawson* (11 C. B. 9) the court, in construing the meaning of the word " building " as used in the statute conferring the right to vote upon the occupier of the building, held that the occupier of one of the several rooms in a factory building was the exclusive occupier of a building. In *Houlihan* v. *Preferred Accident Insurance Co.* (127 App. Div. 630) where an accident policy insured a party against accidents " caused by the burning of a building ", while the insured was therein, the insurer was held liable for the death caused by the burning of the contents of a room in the building; and that the accident was caused " by the burning of the building " within the

terms of the policy and that it was immaterial whether more or less of the building itself was actually consumed; in other words, that a fire *in* a building is a burning of *a* building. However, these cases seem to interpret insurance policies and voting rights, and are not applicable.

It is well to note, in passing, that on July 31, 1945, upon expiration of the leases held by the petitioner and tenant, respectively, the positions of the two litigants in this proceeding will be reversed, for the tenant herein will become the lessee-landlord and the petitioner-landlord will become the tenant. Then if Rubenstein Bros. Drinks, Inc., undertakes to oust the Blitzkrieg Amusement Corporation because of the need for more space, the attorneys will be constrained to execute legal somersaults. However interesting, it is fruitless to speculate upon that event.

The rights given under " subdivision (d) of section 8 " are to those landlords who can satisfy certain conditions. The first condition is in the alternative. The landlord must either have (1) owned or acquired an enforcible right to buy or take possession of the building on or before the effective date of the act, or (2) acquired title to the building subsequent to the effective date of the act. The second condition is that the landlord must seek in good faith to recover possession of the business space for his immediate and personal use. The third condition is that the landlord must have an equity in the property of not less than 25% of the purchase price. This condition applies to landlords satisfying either of the alternative conditions set forth under (1). The fourth condition is that if the tenant occupies under a lease, the privilege to terminate upon the sale of the building must be reserved in the lease. The fifth condition is that the landlord must own at least 50% of the whole investment in the business which he proposes to carry on in such space. All of the above conditions must be satisfied before the right to dispossesss the tenant accrues. It will be seen, therefore, that the definition of " landlord " contained in subdivision (d) of section 2 has been limited in accordance with the provisions contained in the opening language of section 2. Ownership of the whole of the premises is required. The section applies only to the owner-landlord and not to the lessee-landlord. The language to that effect contained in the first alternative conditions under " subdivision (d) of section 8 " is borne out by the third condition, which speaks of an equity in the property, i.e., a mortgagor, measured by a certain percentage of a " purchase price ". The fourth condi-

tion also presupposes an application only to the owner-landlord as it speaks of the sale of the building.

That only a "landlord" who has acquired full legal title to the building or a purchaser and vendee of the building and not a mere lessee of the building or business space is entitled to the exception provided for is made more evident by the limitation "and provided, further", etc. Here, cancelation of a tenant's lease by which he may be considered holding over without permission of the "landlord" can only be effected if there is a privilege reserved to terminate the lease "upon sale of the building" and cannot be effectuated so as to lead to the dispossession of the tenant by a cancelation notice given under an absolute reservation in the landlord.

It will be assumed the Legislature had before it all the situations which might arise between "landlords and tenants" and to the factors giving rise to the emergency. It did not regulate all relations between landlords and tenants in such manner as to restrict the free alienation of real property or to prevent a landlord-owner from using his property for his own personal and immediate use. It did restrain certain "landlords" from the unrestricted use and disposition of leased property heretofore prevailing under landlord and tenant law. It provided that a landlord "sublessor" may evict for nonpayment of rent due him or to sue for such rent. It also provided that a landlord "sublessor" may maintain a proceeding under section 4 of chapter 314 of the Laws of 1945 to obtain a rent exceeding in amount the emergency rent, and it is the wording of this section which justifies my conclusion that the Legislature intended a distinction between "landlords". In that section the Legislature clearly distinguishes between an owner-landlord and a lessee-landlord, and its failure to make that distinction in some of the subdivisions of section 8 and, instead, particular conditions and requirements being imposed, convinces me that the Legislature intended to restrict a lessee-landlord in the removal of his tenant, by denying to him the right to maintain summary proceedings to dispossess under subdivision (d) of section 8 of chapter 314 of the Laws of 1945.

While the Emergency Rent Laws of 1920 (L. 1920, chs. 130 et seq.) are not strictly applicable to situations arising under the present Emergency Rent Laws, each covering a different subject matter, nevertheless, the wording of subdivision 1-a of section 1410 of the Civil Practice Act, then in effect but since repealed, is of some assistance to us in seeking the legislative intent as to what "landlords" it will exempt from the restrictions imposed by the various Emergency Rent Laws.

By that section, it permitted the " owner of record of the building " to maintain a summary proceeding to recover possession of the same, in good faith, for his own immediate and personal occupany as a dwelling. Under that section, the Appellate Division, First Department, in the summary proceeding of *Silkman* v. *Schwartz* (201 App. Div. 38) denied recovery to the " lessee-lessor of the building ". In the present law, the right to maintain summary proceedings is not reserved to the " owner of record of the building ", a strict legal classification, but has extended it to those who have equitable but not legal rights, which is more consonant with proper legislative regulatory power.

A pertinent case is the Appellate Term, First Department, decision in *Cannon* v. *Gordon* (181 Misc. 950).

The lessee-landlord contends that because of the definition of " landlord " in subdivision (d) of section 2, the Legislature clearly intended that the petitioner herein is amongst that class authorized to bring this proceeding. Although this court is desirous of giving full weight to the value and overriding effect of the intention of the Legislature in the construction of a statute, the use of legislative intent has its limitations. As expressed in *Furey et al.* v. *Town of Gravesend et al.* (104 N. Y. 405, 410), this limitation is as follows: " In giving a construction to this act, courts are confined to the language and terms employed by the legislature, and are not at liberty to interpolate phrases and provisions, although otherwise the purpose and intention, of the law making power may seem indefinite, obscure or incomplete.

" If they have failed to insert such provisions in the law as will accomplish the result intended, their omission cannot be remedied by construction, and the law must, to that extent, be considered defective and inoperative."

No right exists under this law to permit a lessee who has leased part of the " business space " in a building from the paramount landlord and who has subleased a portion of that business space to a subtenant to dispossess his subtenant in accordance with the terms of the sublease or at the termination of the sublease on the ground that he seeks in good faith to recover the possession of the business space for his immediate and personal use.

It is conceded that the definition of " landlord " contained in section 2 of the Di Constanzo Act embraces the petitioner as it covers any person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any business

space. The definitions in that section are, however, subject to the restriction that they shall have a specified meaning. " § 2. Unless expressly otherwise provided, whenever used in this act, the following terms shall mean or include: * * * (d) ' Landlord.' An owner, lessor, sublessor, receiver, trustee, executor, assignee, or other person receiving or entitled to receive rent for the use or occupancy of the whole or a part of any business space.''

Both sides having moved for a direction of a verdict and the lessee-landlord herein, not answering to the description of the " Landlord " authorized to take advantage of the exception contained in subdivision (d) of section 8 of chapter 314 of the Laws of 1945 is not entitled, either in law or in fact, to a final order, and the motion for the direction of a verdict in favor of the tenant is herewith granted.

Therefore final order in favor of the tenant dismissing the petition will be entered forthwith.