RALPH T. REED, as President of American Express Company, Landlord, Appellant, *v.* JAMES W. BELL & Co., INC., Tenant, Respondent.

Supreme Court, Appellate Term, First Department, April 24, 1947.

*William S. Gaud, Jr.,* and *Donald K. Miller* for appellant.

*Caesar L. Pitassy* for respondent.

SHIENTAG, J. The landlord is the American Express Company, which in 1939 leased from the owner, 647 Fifth Avenue Corporation, the basement, ground floor, mezzanine and second floor of 647 Fifth Avenue for a term of ten years. During the war, when it was forced to curtail its activities, and on November 12, 1942, the Express Company leased to the tenant, James W. Bell & Co., Inc., the second floor of the building for the period from December 1, 1942, to December 9, 1949. The lease provided that under certain conditions which have been complied with the landlord Express Company might give sixty days' notice to Bell canceling the lease. Such a written notice was served April 9, 1946, canceling the lease as of June 15, 1946. On the trial the landlord established a prima facie case that it needed these premises for its own use in good faith for its rapidly growing business. On the facts as they stood at the close of the landlord's case the good faith of the landlord was established as a matter of law and fact.

The tenant, however, moved to dismiss on the ground that a case had not been made out by the landlord under the provisions of chapter 3 of the Laws of 1945, as amended by chapter 272 of the Laws of 1946. This law provides in clause (1) of subdivision (h) of section 8, that a landlord may acquire premises for its own use, in good faith, where the landlord has an enforcible right " to take possession of the entire building or other rental area for a term of not less than ten years " and that such right existed on or before January 24, 1945. The landlord appellant meets the statutory requirements, unless the words " or other rental area " used in the statute are to be considered as not covering a landlord whose lease covers only a portion of an entire building.

Subdivision (h) of section 2 defines a landlord so as to include a lessor and a sublessor of commercial space. Concededly the Express Company is not the lessee of this entire building. But the term " other rental area " is on its face unambiguous and includes part of a building as well as undeveloped outdoor space which may for some reason be rented.

There would be no difficulty with this case except for the fact that before the amendment was enacted, the New York State Joint Legislative Committee to Study Rents reported to the Legislature in the following language (N. Y. Legis. Doc., 1946, No. 46, p. 12): " The Committee staff has engaged

in making an active check on the operation of the emergency laws. Constant investigations have been made of landlord-tenant relationships. As a result of such examinations and a study of judicial interpretations, minor imperfections have been noted which require correction. One such imperfection relates to parking lots. It was the intention of the Committee to include parking lots and other outdoor space in the original enactment. An adjudication has been made, however, that the act does not so provide. In another judicial opinion, the suggestion has been made that the owner of at least 90 per cent of the stock of a corporation which owns an entire premises be deemed to be a landlord for the purpose of obtaining possession for his own use. The Committee has given favorable consideration to this proposal and has approved it.''

I hold that there is no warrant for interpreting the unambiguous description '' other rental area '' as limited to open land or parking spaces. What the Legislature intended to be done can only be legitimately ascertained from what it has chosen to enact. It is only when the words of a statute are ambiguous or obscure that the courts may go outside the statute itself in an endeavor to ascertain their true meaning in the setting in which they have been used. Here the language '' or other rental area '' is clear; it has a definite meaning. There is nothing ambiguous or obscure about it. The courts have no right, therefore, to go outside the statute for the purpose of ascertaining an alleged intention of the Legislature contrary to or at variance with the clearly expressed language in the statute itself.

'' In construing statutes, it is a well-established rule that resort must be had to the natural signification of the words employed, and if they have a definite meaning, which involves no absurdity or contradiction, there is no room for construction and courts have no right to add to or take away from that meaning.'' (*Tompkins* v. *Hunter,* 149 N. Y. 117, 122–123.)

It was also held in *Settle* v. *Van Evrea* (49 N. Y. 280, 281) that '' * * * intention is first to be sought from the words employed, and if the language is unambiguous, the words plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation.''

Similarly, in *Town of Putnam Valley* v. *Slutzky* (283 N. Y. 334, 343) Judge RIPPEY said: '' We find nothing ambiguous in the wording of section 27, subdivision 2, of the Town Law. Its words and meaning on its face seem clear. The idea of

the Legislature is not in doubt and its meaning and effect cannot be extended by conjecture or implication.''

There seems to be no functional purpose served in distinguishing between lessees of entire buildings and of undeveloped real property and long-term lessees of part of a building. The statute clearly purports to give all long-term lessees, whether of the whole or of part of a building, the same right as an owner to recover leased premises needed for personal use in good faith. Any other construction would produce strange and anomalous results. If there are two possible interpretations of the statute, the court should adopt that which will produce equal, reasonable and just results. Statutes should not be so construed as to create inequality between persons substantially similarly situated, and we should not presume that the Legislature intended unreasonable effects (*People ex rel. Beaman* v. *Feitner,* 168 N. Y. 360; *People* v. *Santoro,* 229 N. Y. 277).

The final order should be reversed and new trial ordered, with $30 costs to appellant to abide the event.

HECHT, J. (dissenting). The question presented is whether the landlord comes within any of the exceptions set forth in section 8 of chapter 3 of the Laws of 1945, as amended by chapter 272 of the Laws of 1946.

Prior to the 1946 amendment of the Commercial Rent Law the courts uniformly held that subdivision (d) of section 8 of the Act only applied to owners, not tenant landlords (*Trade Accessories* v. *Bellet,* 184 Misc. 962, appeal dismissed 295 N. Y. 763; *Blitzkrieg Amuse. Corp.* v. *Rubinstein Bros. Drinks,* 184 Misc. 975; *Gilroy* v. *Becker,* 186 Misc. 93).

Section 8 of the statute, as amended in 1946 by the addition of clause (1) of subdivision (h), provides that if on or before January 24, 1945, '' The landlord acquired an enforceable right to take possession of the entire building or other rental area for a term of not less than ten years '' the landlord may, on proof of compliance with prescribed conditions, remove the tenant from the premises.

Landlord claims that the phrase '' or other rental area '' permits the tenant of less than an entire building to invoke the amended act.

It seems clear that the landlord must have a right to '' take possession of the entire building ''. Support for this construction is found in the report of the New York State Joint Legislative Committee to Inquire into and Study Commercial Rents in New York City (N. Y. Legis. Doc., 1945, No. 2). A

supplemental report made by this committee in 1946 recommended amendments to the emergency rent laws to permit long term lessees of *entire* buildings to remove subtenants. The committee's recommendation reads as follows (N. Y. Legis. Doc., 1946, No. 46, p. 12): "The Committee recommends further that the same privilege be afforded to long-term lessees of entire buildings who satisfy certain added requirements, designed to fully protect sub-tenants from abuses." And it further recommended an amendment which would include parking lots and other space (p. 12) as follows: "The Committee staff has engaged in making an active check on the operation of the emergency laws. Constant investigations have been made of landlord-tenant relationships. As a result of such examinations and a study of judicial interpretations, minor imperfections have been noted which require correction. One such imperfection relates to parking lots. It was the intention of the Committee to include parking lots and other outdoor space in the original enactment. An adjudication has been made, however, that the act does not so provide."

Evidently the insertion of the phrase "or other rental area" was made by the Legislature throughout the statute to cover unimproved land, parking lots and other outdoor space in addition to buildings and in no way modifies, limits or affects the word "building" (amendments to § 2, subd. [e]; §§ 4, 8; L. 1946, ch. 272, §§ 1, 2), and "entire building" means just what the act says in that regard.

The landlord argues that such construction of the statute would produce a result unequal, unreasonable, unjust and unconstitutional, in that a tenant of an entire building would have rights that a tenant of less than the entire building would not have. We see no force in this argument. The Legislature in the exercise of its police power has a wide discretion in determining the extent and nature of the regulations necessary in the enactment of this emergency legislation, and the distinction between an entire building and part of a building made in this instance is neither arbitrary nor capricious (*A. E. F.'s, Inc.,* v. *City of New York,* 295 N. Y. 381, 385).

The final order should be affirmed, with $25 costs.

EDER, J., concurs with SHIENTAG, J.; HECHT, J., dissents in opinion.

**Order reversed, etc.**