[645 NYS2d 69]

CHARLES J. HYNES, as District Attorney of Kings County, Appellant-Respondent, v VICTOR IADAROLA et al., Respondents-Appellants, et al., Defendants.

Second Department, July 1, 1996

APPEARANCES OF COUNSEL

*Charles J. Hynes, District Attorney* of Kings County (*Debra W. Petrover, David J. Fried* and *Joseph J. McCarthy, Jr.,* of counsel), appellant-respondent *pro se.*

## OPINION OF THE COURT

MANGANO, P. J.

The question raised on this appeal is whether the Supreme Court improvidently exercised its discretion in denying the plaintiff's application for an award of predecision interest pursuant to CPLR 5001 in the instant civil forfeiture action. In our view, this question must be answered in the affirmative.

### I

The defendants Victor Iadarola and Benito Iadarola (hereinafter the Iadarolas) were charged, in indictments filed in 1991, with multiple counts of the crimes of enterprise corruption, promoting gambling in the first degree, possession of gambling records in the first degree, and possession of gambling records in the second degree. After a jury trial, the defendants were convicted in 1994 of enterprise corruption. The underlying acts for these convictions were the operation by the Iadarolas of numerous gambling locations between November 1988 and July 1991. The Iadarolas appealed their judgments of conviction and the judgments were affirmed by this Court (*see, People v Iadarola [Victor],* 222 AD2d 454; *People v Iadarola [Benito],* 222 AD2d 454).

In September 1991, the plaintiff commenced a civil forfeiture action pursuant to CPLR article 13-A against the Iadarolas. After joinder of issue, the civil forfeiture action was stayed during the pendency of the criminal action (*see,* CPLR 1311 [1] [a]).

On September 6, 1994, i.e., two months after the Iadarolas were sentenced in the criminal action, the plaintiff moved for summary judgment in the civil forfeiture action in the principal amount of $15,408,402, with interest. In a decision dated January 13, 1995, the Supreme Court granted partial summary judgment to the plaintiff against Victor Iadarola in the principal sum of $2,665,639.60, and against Benito Iadarola in the principal sum of $3,258,003.90. In its decision, the Supreme Court did not determine the question of predecision interest pursuant to CPLR 5001, but instead "directed" the

parties "to file briefs" on this issue. The plaintiff submitted a memorandum in support of an award of predecision interest pursuant to CPLR 5001 from July 27, 1991 through January 13, 1995, at the rate of 9%. The defendants' counsel opposed the plaintiff's arguments in a letter dated May 4, 1995.

By order dated May 18, 1995, the Supreme Court denied the plaintiff's application for an award of predecision interest pursuant to CPLR 5001. In a separate memorandum decision, the Supreme Court opined that the instant civil forfeiture action was of an "equitable nature" and accordingly, an award of predecision interest was "discretionary with the court". In exercising its discretion against an award of predecision interest, the Supreme Court stated:

"Interest is awarded to a party in order to compensate the party for the loss of the use of the owner's property wrongfully taken or withheld. * * *

"In this case, plaintiff is not the owner of the gambling proceeds. The owner of the gambling proceeds is the placer of the bet. * * *

"In addition, the judgment represents a gross amount of the bets placed. The amount of the judgment does not consider the expenses of the criminal enterprise. As such, defendants did not have the full use of the judgment amount during the period involved, and did not earn interest on the full amount.

"In this equitable action, under these circumstances, the court feels it inappropriate to award pre-verdict or decision interest".

In accordance with the Supreme Court's decision, a judgment was thereafter entered in favor of the plaintiff and against the Iadarolas which failed to award the plaintiff predecision interest pursuant to CPLR 5001. It is from this part of the judgment that the plaintiff appeals.

## II

The Court of Appeals has clearly stated that "[t]he legislative purpose sought to be achieved through the enactment of CPLR article 13-A was 'to take the profit out of crime' (1984 McKinney's Session Laws of NY, at 3627-3628)" (*Morgenthau v Citisource, Inc.,* 68 NY2d 211, 217). Indeed, CPLR article 13-A is based on the "fundamental equitable principle" (*Matter of Children of Bedford v Petromelis,* 77 NY2d 713, 727), long recognized in New York, that "[n]o one shall be permitted to profit by his own fraud, or to take advantage of his own wrong,

or to found any claim upon his own iniquity, or to acquire property by his own crime" *(Riggs v Palmer,* 115 NY 506, 511; *see also, Simon & Schuster v Members of N. Y. State Crime Victims Bd.,* 502 US 105). In order to effectuate this public policy, CPLR article 13-A provides, *inter alia,* for "the institution of an action which is civil, remedial and in personam in nature (CPLR 1311 [1]), by a 'claiming authority' " *(Morgenthau v Citisource, Inc., supra,* at 217) against a criminal defendant. A "criminal defendant" (CPLR 1310 [9] [a]) is a person who, as in the case at bar, "has been convicted of a 'post-conviction forfeiture crime' defined as any felony found in the Penal Law or any other chapter of the consolidated laws of the State (CPLR 1310 [5])" *(Morgenthau v Citisource, Inc., supra,* at 217). An action against a criminal defendant may be brought "to recover the property which constitutes the proceeds of a crime, [or] the substituted proceeds of a crime * * * or to recover a money judgment in an amount equivalent in value to the property which constitutes the proceeds of a crime, [or] the substituted proceeds of a crime" (CPLR 1311 [1]). "Proceeds of a crime" is specifically defined as "any property obtained through the commission of a felony crime * * * and includes any appreciation in value of such property" (CPLR 1310 [2]). "Substituted proceeds of a crime" is specifically defined as "any property obtained by the sale or exchange of proceeds of a crime, and any gain realized by such sale or exchange" (CPLR 1310 [3]).

The plaintiff correctly argued before the Supreme Court that the point of these definitions: "is to ensure that an order for the recovery of proceeds deprives the defendant of any economic benefit from his crimes. This includes, for example, the gain he might realize from purchasing an appreciating asset—a house, or shares in a mutual fund, or a certificate of deposit, or even savings bank interest. Thus the recovery of proceeds takes the profit out of crime. * * * But the statutory scheme recognizes the difficulty of tracing the actual proceeds of crime into assets, and further recognizes that such assets may be untraceably dissipated before the commencement of an action. Therefore it provides the alternative remedy of a money judgment in an amount equal to proceeds". With this background, we now turn to the issue of predecision interest.

### III

CPLR article 13-A does not specifically deal with the issue of interest. CPLR 1350 simply provides, in pertinent part that: "The civil practice law and rules shall govern the procedure in

proceedings commenced under this article". CPLR 5001 (a) provides as follows:

"§ 5001. Interest to verdict, report or decision * * *

"in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion".

The Supreme Court correctly held that the instant action was one of an "equitable nature" since it essentially seeks to recover "monies held in constructive trust by wrongdoer[s]/lawbreaker[s]", i.e., the Iadarolas (see also, Roberts v Ely, 113 NY 128, 131). In analyzing a similar civil forfeiture statute in Indiana, an intermediate appellate court stated: "By denying individuals the ability to profit from ill-gotten gain, an action for forfeiture resembles an equitable action for disgourgement or restitution" (Caudill v State, 613 NE2d 433, 437 [Ind]; see also, State ex rel. Day v Southwest Min. Energy, 617 P2d 1334, 1336-1337 [Okla]). However, in our view, the Supreme Court improvidently exercised its discretion in denying the plaintiff's application for an award of predecision interest pursuant to CPLR 5001. We note that, "[p]ublic policy favors awarding interest in equity actions" (5 Weinstein-Korn-Miller, NY Civ Prac ¶ 5001.06). Further, a defendant's "corrupt intent or desire for personal profit" (Spadanuta v Incorporated Vil. of Rockville Centre, 20 AD2d 799, 800, affd 15 NY2d 755) is a factor to be weighed in the court's exercise of discretion pursuant to CPLR 5001 (see, Spadanuta v Incorporated Vil. of Rockville Centre, supra). In Federal disgorgement actions based on violations of Federal securities laws, which are analogous to the action at bar, the Federal courts have exercised their "judicial discretion" in favor of awards of prejudgment interest on the ground that these awards "deprive the [defendants] of their ill-gotten gains * * * prevent[ ] unjust enrichment * * * [and] accord with the doctrine of fundamental fairness" (Securities & Exch. Commn. v Drexel Burnham Lambert, 837 F Supp 587, 612; see also, Securities & Exch. Commn. v Tome, 638 F Supp 638, affd 833 F2d 1086, cert denied sub nom Transatlantic Fin. Co. v Securities & Exch. Commn., 486 US 1014).

Viewed within these parameters, the Supreme Court's reasoning in denying the plaintiff's application for an award of predecision interest is unpersuasive. The fact there are no identifiable innocent victims in the instant civil forfeiture action, should not, standing alone, be used by the defendants to thwart the public policy of this State. As the plaintiff cogently argued before the Supreme Court:

"a money judgment will not have the effect of depriving the defendant of the economic benefit of his crimes unless it includes interest. An award of interest at the statutory rate of nine percent is a conservative equivalent to the investment value of the defendant's ill-gotten gains. * * * This discretion is conferred precisely to prevent unjust enrichment, whether by defrauding identifiable victims or by a supposedly 'victimless' crime. * * *

"Thus interest * * * in a civil forfeiture action is, and was intended by the Legislature to be, the equivalent of the appreciation in value of criminal proceeds which can be captured when tracing is possible".

Similarly unavailing is the Supreme Court's second reason for denying the plaintiff's application for an award of predecision interest, i.e., that the judgment against the Iadarolas did "not consider the expenses of the criminal enterprise". This reason is also in conflict with the public policy underlying the civil forfeiture statute (see generally, Morgenthau v Clifford, 157 Misc 2d 331).

In conclusion, we hold that in the instant civil forfeiture action pursuant to CPLR article 13-A, the Supreme Court improvidently exercised its discretion in denying the plaintiff's application for an award of predecision interest pursuant to CPLR 5001. Accordingly, the judgment must be reversed, insofar as appealed from, and the matter remitted to the Supreme Court for the entry of an appropriate amended judgment.

The appeal from the intermediate order must be dismissed because the right of direct appeal therefrom terminated with the entry of judgment in the action (see, Matter of Aho, 39 NY2d 241, 248). The issues raised on the appeal from the order are brought up for review and have been considered on the appeal from the judgment (CPLR 5501 [a] [1]).

ROSENBLATT, PIZZUTO and HART, JJ., concur.

Ordered that the appeal from the order dated May 18, 1995 is dismissed; and it is further,

Ordered that the cross appeal by the defendants Benito Iadarola and Victor Iadarola from the judgment is dismissed as abandoned; and it is further,

Ordered that the judgment is reversed, insofar as appealed from, as a matter of discretion, and the matter is remitted to

the Supreme Court, Kings County, for the entry of an appropriate amended judgment in accordance herewith; and it is further,

Ordered that the plaintiff is awarded one bill of costs.