[705 NYS2d 320]

New York State Crime Victims Board, Appellant, v T.J.M. Productions, Inc., et al., Respondents.

First Department, March 7, 2000

## APPEARANCES OF COUNSEL

*Daniel Smirlock* of counsel (*Peter H. Schiff* and *John McConnell* on the brief; *Eliot Spitzer, Attorney General* of the State of New York, attorney), for appellant.

*Michael G. Dowd* of counsel (*Samantha J. Leventhal* on the brief; *Law Offices of Michael G. Dowd,* attorneys), for T.J.M. Productions, Inc. and another, respondents.

*Slade R. Metcalf* of counsel (*Jean Voutsinas* on the brief; *Squadron, Ellenoff, Plesent & Scheinfeld, L. L. P.,* attorneys), for HarperCollins Publishers, Inc. and others, respondents.

*Victor A. Kovner* of counsel (*Jeffrey H. Blum* on the brief; *Davis Wright Tremaine, L. L. P.,* attorneys), for International Creative Management, Inc., respondent.

*Larry H. Krantz* of counsel (*Marjorie E. Berman* on the brief; *Krantz & Berman, L. L. P.,* attorneys), for Salvatore Gravano, respondent.

## OPINION OF THE COURT

RUBIN, J.

For the past two decades, the Legislature of this State has attempted to provide a source of funds to compensate crime victims for the damages they sustain at the hands of criminals. The effort to "take the profit out of crime" by seizing the instrumentalities employed in its commission has been hugely successful (*see,* 1 Kessler, Criminal and Civil Forfeiture, ch 1, § 1.01). However, the "Son of Sam" Law, the Legislature's effort to prevent the criminal from reaping a windfall from the notoriety generated by the very crime he has committed (L 1977, ch 823, § 1, as amended) was thwarted by constitutional challenges mounted on First Amendment grounds (*Simon & Schuster v Members of NY State Crime Victims Bd.,* 502 US 105 [1991]; *see also, Matter of Children of Bedford v Petromelis,* 79 NY2d 972). The United States Supreme Court found that the statute was not narrowly drawn to advance the "compelling [State] interest in depriving criminals of the profits of their crimes, and in using these funds to compensate victims" (*Simon & Schuster v Members of NY State Crime Victims Bd.,* *supra,* at 119) so as to justify its differential treatment of

income derived from literary endeavor based upon the ideas expressed.

As originally conceived, the Son of Sam Law required the sequestration of sums payable as the result of any expression concerning a crime by a person accused or convicted of its commission. Funds subject to the statute were recoverable by the Crime Victims Board, which was to hold them in escrow for a period of five years. During this period, any victim of the crime could commence a civil action for damages and satisfy any ensuing judgment out of the escrowed funds (Executive Law § 632-a [4]). This statutory scheme was found to be "presumptively inconsistent with the First Amendment" because it "imposes a financial burden on speakers because of the content of their speech" (*Simon & Schuster v Members of NY State Crime Victims Bd.*, *supra*, at 115), because it limits the crime victim's recovery to proceeds obtained from expressive activity (*supra*, at 116) and because it reaches literary works unrelated to the crime for which compensation is sought to be provided (*supra*, at 121).

As the Court noted, "The Son of Sam law supplements preexisting statutory schemes authorizing the Board to compensate crime victims for their losses" (*supra*, at 111). Prominent among such statutes are the provisions for civil forfeiture of the proceeds of a crime, such as those contained in CPLR 1310 to 1352 (*see also*, Penal Law § 60.27 [restitution]; CPLR 6201-6226 [prejudgment attachment]). However, the Court noted that the Son of Sam Law supplements these provisions only to the extent that the accused earns income that falls within its scope. Therefore, the Court concluded, while "the State has a compelling interest in compensating victims from the fruits of the crime," it has "little if any interest in limiting such compensation to the proceeds of the wrongdoer's speech about the crime" (*Simon & Schuster v Members of NY State Crime Victims Bd.*, *supra*, at 120-121).

The statute applied to a wide range of protected speech "with respect to the reenactment of such crime, by way of a movie, book, magazine article, tape recording, phonograph record, radio or television presentation, live entertainment of any kind, or from the expression of such accused or convicted person's thoughts, feelings, opinions or emotions regarding such crime" (Executive Law § 632-a [1]). The five-year period for commencement of an action superseded any applicable Statute of Limitations, and the law applied both to convicted criminals and to anyone who "voluntarily and intelligently admitted the com-

mission of a crime for which such person is not prosecuted" (§ 632-a [10] [b]). The law covered works on any topic in which the author recounted a crime, "however tangentially or incidentally," resulting in its application to "a potentially very large number of works" (*Simon & Schuster v Members of NY State Crime Victims Bd., supra,* at 121). Because of its broad reach, encompassing such works as The Autobiography of Malcolm X and Thoreau's Civil Disobedience, the State was unable to demonstrate " 'that its regulation is necessary to serve a compelling state interest and is narrowly drawn to achieve that end' " (*supra,* at 118 [quoting *Arkansas Writers' Project v Ragland,* 481 US 221, 231]). Thus, the Court concluded that the statute was both overinclusive in the works that it affected and underinclusive in the restriction of crime victim compensation to income derived from expressive activity.

In 1992, the Legislature undertook to redraft the Son of Sam Law to overcome the constitutional infirmities of the previous enactment (L 1992, ch 618, § 10 [eff July 24, 1992]). To that end, the income subject to its provisions has been substantially expanded (Executive Law § 632-a [1] [b]). At the same time, the class of persons to whom it applies has been limited to convicted felons (Executive Law § 632-a [1] [a]). However, the most dramatic difference from the former enactment is the integration of the Son of Sam Law into the broader statutory scheme alluded to by the United States Supreme Court. The integration is so complete that the amended statute makes only a modest addition to existing forfeiture provisions. It has been so curtailed that the question before this Court is not whether the Legislature has succeeded in removing the unconstitutional infringement upon First Amendment expression, but whether the Crime Victims Board has stated a cause of action in which the constitutional issues raised by the parties can be addressed.

In its present incarnation, Executive Law § 632-a (1) (a) defines "crime" as "any felony defined in the penal law or any other chapter of the consolidated laws of the state." This provision not only serves to limit application of the statute to income earned by convicted felons, it also restricts the subject crimes to those defined under State law. Defendants argued, and the trial court (Leland DeGrasse, J.) agreed, that this language does not encompass conviction for a Federal offense.

This construction is consistent with the statutory scheme. The language is *in haec verba* the definition of "Post-conviction forfeiture crime" contained in CPLR 1310 (5). Offenses within

this section are limited to "any felony found in the Penal Law or any other chapter of the consolidated laws of the State (CPLR 1310 [5])" (*Morgenthau v Citisource, Inc.*, 68 NY2d 211, 218; *see also, Elkin v Cassarino*, 248 AD2d 35, 38).

CPLR article 13-A does not contain any provision for forfeiture predicated on an offense committed in another jurisdiction that is the equivalent of a State felony (*cf.*, Penal Law § 70.06 [1] [b] [i]; *People v Muniz*, 74 NY2d 464, 467 [predicate felony offense]; Judiciary Law § 90 [4] [d] ["serious crime"]), and its application has been almost universally limited to crimes that were prosecuted in this State (*Morgenthau v Citisource, Inc., supra; Hynes v Iadarola*, 221 AD2d 131; *Kuriansky v Bed-Stuy Health Care Corp.*, 135 AD2d 160, *affd* 73 NY2d 875). Anomalously, the Appellate Division, Third Department, has departed from general practice by applying article 13-A forfeiture provisions to a Federal crime for which there exists an equivalent State felony (*Hendley v Clark*, 147 AD2d 347). However, its enlargement of the statute extended only to a "Pre-conviction forfeiture crime" (CPLR 1310 [6]), which is restricted to those felonies defined in Penal Law article 220 and sections 221.30 and 221.55. Furthermore, as the Court emphasized, under that forfeiture provision, there is arguably an alternative ground available to the District Attorney to prove, by clear and convincing evidence in the context of a civil proceeding, that a State law has been violated (CPLR 1311 [1] [b]; *Hendley v Clark, supra*, at 348). No such alternative basis exists in a forfeiture proceeding predicated on a postconviction offense.

Plaintiff-appellant's response is to argue that the former statute had been applied both to Federal and State crimes (citing *St. Martin's Press v Zweibel*, NYLJ, Feb. 26, 1990, at 25, col 1 [Sup Ct, NY County]) and that, because certain legislative memoranda indicate an intention to expand the scope of the law, the present statute should be similarly construed. However, as the Court of Appeals stated in *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.* (45 NY2d 471, 480), "It is an elementary principle of statutory construction that courts may only look behind the words of a statute when the law itself is doubtful or ambiguous." Similarly expressed, "What the Legislature intended to be done can only be ascertained from what it has chosen to enact, and it is only when words of the statute are ambiguous or obscure that courts may go outside the statute in an endeavor to ascertain their true meaning" (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b], at 183, citing *Reed v Bell & Co.*, 188 Misc 914). Plaintiff

has not shown that the statutory language encompasses any offense other than a State felony. More significantly, however, plaintiff has not yet established that the statute confers the authority to bring the instant action.

The Crime Victims Board seeks to compel defendants to pay into court, or to the Board, moneys paid under contract to or on behalf of the criminal subject and collaborator of Underboss, a book by one Salvatore Gravano, more colorfully known as "Sammy the Bull." The Board's complaint seeks declaratory, injunctive and monetary relief based upon "defendants' intentional failure to comply with New York's Son of Sam Law" by failing to turn over the contracts and monies with respect to the book, which is based upon Gravano's life. Recovery is predicated on Gravano's conviction for participating in a racketeering enterprise in violation of 18 USC § 1962 (c) (the RICO Act) resulting in a sentence to a term of imprisonment of 60 months. Defendant Gravano, a former member of the Gambino crime family, testified against John Gotti and other reputed members of the Mafia. Other defendants in this case are Peter Maas, the author of the book, T.J.M. Productions, Inc. (which the Board alleges Maas created in order to funnel compensation to Gravano for his work on the book and a movie) and International Creative Management, Inc., agent for T.J.M. and Maas as well as Gravano. Finally, the complaint names Harper Collins, Inc., the publisher of the book, Anthea Disney, Harper Collins' president, Harper Collins, Ltd. (an English affiliate) and Twentieth Century Fox Film Corporation, owner of the movie rights to the book (collectively, the media defendants).

In its amended complaint, the Board alleges that defendants "crafted an elaborate scheme, including the creation of a corporate entity, T.J.M. Productions, Inc., in an attempt to avoid complying with the Son of Sam Law and in violation of the public policy of this State." The Board charges that defendants did not timely notify the Board of their agreements concerning book and movie rights with defendant Gravano, a person it asserts to have been convicted of a "crime" within the meaning of the statute. The Board alleges that defendants therefore deprived Gravano's crime victims of a meaningful opportunity to obtain the profits of his crime.

The complaint seeks judgment declaring, *inter alia*, that the money paid to Gravano for his participation in the creation of Underboss constitutes "profits of the crime" and that defendants' failure to notify the Board of their agreements is a viola-

tion of the Son of Sam Law. The Board also seeks damages in an amount equal to all sums paid to Gravano, asserting that defendants are jointly and severally liable for this amount, together with an injunction barring them from paying any more money to Gravano.

Before consideration can be given to the merits of the complaint, it is necessary to establish the boundaries of the new statute that have been erected for the purpose of compliance with First Amendment rights. The revised statute, as indicated at the outset, is modest in comparison to its predecessor. As formerly enacted, the statute provided that any funds held on behalf of a criminal author must be turned over to the Crime Victims Board. This provision is replaced in the present law by a notification requirement. It dictates that an entity agreeing to pay "any profit from a crime," as such profit is defined in the statute, "to a person charged with or convicted of that crime," as such crime is defined in the statute, shall notify the Board "as soon as practicable after discovering that the payment or intended payment is a profit from a crime" (Executive Law § 632-a [2] [a]). The Board is then required to notify victims of the crime of the existence of "such profits" (Executive Law § 632-a [2] [b]).

The right to bring a civil action to recover monies identified as profits from the crime is bestowed exclusively upon the "crime victim," defined to include the victim and the representative of a crime victim, a good Samaritan and "(iv) the crime victims board or other governmental agency that has received an application for or provided financial assistance or compensation to the victim" (Executive Law § 632-a [1] [c]). The statute provides that, upon filing an action, the crime victim shall deliver a copy of the summons and complaint to the Board or give notice prior to filing the action "to allow the board to apply for any appropriate provisional remedies which are otherwise authorized to be invoked prior to the commencement of an action" (§ 632-a [4]). Insofar as the Board's role is concerned, the statute provides, "Upon receipt of a copy of a summons and complaint, the board shall immediately take such actions as are necessary to: (a) notify all other known victims * * * (b) publish * * * a legal notice * * * (c) avoid the wasting of the assets identified in the complaint as the newly discovered profits of the crime, in any manner consistent with subdivision six of this section" (§ 632-a [5]). The referenced section, in turn, provides that the Crime Victims Board "acting on behalf of the plaintiff and all other victims, shall have the right to apply for

any and all provisional remedies that are also otherwise available to the plaintiff" (§ 632-a [6]). Subdivision (6) goes on to specify, "(a) The provisional remedies of attachment, injunction, receivership and notice of pendency available to the plaintiff under the civil practice law and rules, shall also be available to the board in all actions under this section."

It is clear that the amended Son of Sam Law does not provide any new remedies, but consigns the victim, and the Crime Victims Board acting on behalf of the crime victim and other victims, to the remedies already available to the plaintiff under the Civil Practice Law and Rules. It is also apparent that the seminal act that confers authority on the Board to act on behalf of the victim is the receipt of the summons and complaint that has been, or will be, filed by the victim of the crime (§ 632-a [4]; [5] [c]). Only at this juncture may the Board, "acting on behalf of the plaintiff and all other victims," seek any provisional remedy that is available to the plaintiff victim (§ 632-a [6]). It can be seen that the statutory reference to the CPLR 1310 (5) definition of a "Post-conviction forfeiture crime" is quite deliberate as this is the provisional remedy contemplated by the statute for recovery of assets identified as "[p]rofits from the crime" (§ 632-a [1] [b]).

The Son of Sam Law, as revised, grants no additional substantive remedies to the crime victim but provides that the Crime Victims Board will lend assistance by acting to avoid the wasting of assets (§ 632-a [5] [c]). To exercise its powers under the statute, there must exist a lawsuit brought by a victim who has filed, or is about to file, a complaint and on whose behalf the Board is authorized to act. Conspicuously absent from this action is any such predicate lawsuit, a crime victim for whom the Board purports to act or any suggestion that the Board is pursuing subrogation rights to recover compensation paid to such a crime victim (Executive Law § 632-a [1] [c]; § 634).

In its reply brief, the Board claims to have "an implied cause of action against each of the defendants for their alleged knowing violations of the [Son of Sam Law] notification provision." This implied right is said to be derived from the general powers and duties of the Board delineated by Executive Law § 623, which include: "15. To advocate the rights and interests of crime victims of the state before federal, state and local administrative, regulatory, legislative, judicial and criminal justice agencies."

The Crime Victims Board, however, does not purport to find any analogous powers in the specific provisions of section 632-a

governing its pursuit of provisional remedies. It is a well-settled rule of statutory construction that the terms of a provision having specific application to a question will be accorded preference over the terms of a provision with only general application (*e.g.*, *People v Mobil Oil Corp.*, 48 NY2d 192, 200 ["a general provision of a statute applies only where a particular provision does not"]; *Matter of Prospect v Cohalan*, 109 AD2d 210, 216, *affd* 65 NY2d 867 ["specific provisions of the statute must prevail over the general provisions"]; *see*, McKinney's Cons Laws of NY, Book 1, Statutes § 238). As stated by this Court, "where the Legislature enacts a specific provision directed at a particular class, and a more general provision in the same statute which might appear to encompass that class, the specific provision will be applied" (*People v Marrero*, 71 AD2d 346, 349-350). That the power to act with reference to the profits of the crime is exclusively conferred by section 632-a is apparent from the contrasting definitions assigned to the terms "crime" and "victim" in the two provisions. With respect to the section governing the general powers of the Board, the definition of "crime" expressly includes both acts committed within and outside the State, and the term "victim" is limited to a person who sustains physical injury or is subject to kidnapping or unlawful imprisonment (Executive Law § 621 [3], [5]). By contrast, the definition of "crime" in the Son of Sam Law is restricted to a State felony, and the term "victim" includes the subject of the felonious conduct (§ 632-a [1] [a], [c]). Even if the Board were able to establish an inherent right to prosecute violations of the notification provision of the Son of Sam Law, the Legislature has provided no penalty for the infraction of this provision. In any event, plaintiff presumes to act as a member of the class for whom the Son of Sam Law was enacted, that is, as a "crime victim" within the meaning of Executive Law § 632-a (1) (c). That section, which confers subrogation rights upon a governmental agency, simply does not apply to plaintiff in the present context.

In the attempt to overcome the constitutional objections voiced in *Simon & Schuster v Members of NY State Crime Victims Bd.* (502 US 105, *supra*), the Legislature has drafted a much narrower statute that restricts actions to recover proceeds of a crime to those procedural devices presently existing in State law. What the Son of Sam Law adds to these remedies is an expanded definition of "profits" derived from the crime, which include "income generated as a result of having committed the crime, including any assets obtained through

the use of unique knowledge obtained during the commission of, or in preparation for the commission of, the crime" (Executive Law § 632-a [1] [b] [iii]). Assuming that the procedures for obtaining forfeiture of the proceeds of a crime meet constitutional safeguards, there remains a constitutional issue with respect to this definition insofar as it implicates income derived from expressive activity. The media defendants dispute that they "knowingly" entered into a contractual arrangement involving Gravano to pay "any profit from a crime * * * to a person charged with or convicted of that crime" (Executive Law § 632-a [2] [a]) so as to require them to notify the Crime Victims Board. The question of whether such income truly represents "fruits of the crime" was deliberately left unanswered by the United States Supreme Court in *Simon & Schuster (supra*, at 119).

To this extent, the instant case raises a significant constitutional question. However, it is raised in an action that plaintiff Crime Victims Board has no statutory authority to bring and that concerns a crime to which the statute is inapplicable. The Son of Sam Law provides a right of action unknown at common law and is therefore subject to strict construction by the courts (*Morris v Snappy Car Rental*, 84 NY2d 21, 28; *Matter of Bayswater Health Related Facility v Karagheuzoff*, 37 NY2d 408, 414; *Maxwell v State Farm Mut. Auto. Ins. Co.*, 92 AD2d 1049, 1050; McKinney's Cons Laws of NY, Book 1, Statutes § 301). The right of action granted to the victim of a felony may not be extended by implication to plaintiff, whose role is limited to the application for provisional remedies on behalf of a victim who is the plaintiff in an action brought pursuant to the statute. As this action is not authorized by Executive Law § 632-a, it must be dismissed.

Accordingly, the order of the Supreme Court, New York County (Leland DeGrasse, J.), entered April 24, 1998, which granted defendants' motions to dismiss the complaint for failure to state a cause of action under Executive Law § 632-a, should be affirmed, without costs.

MAZZARELLI, J. (concurring). I would affirm the order appealed, but on the narrower ground that Executive Law § 632-a, this State's "Son Of Sam Law," does not provide a right of action in favor of the Crime Victims Board for declaratory relief, injunctive relief, monetary damages, or attorneys' fees for a breach of the statute's notification provision (Executive Law § 632-a [2] [a]).

As the majority has explained, an entity which agrees to pay "any profit from a crime," "to a person charged with or convicted of that crime," is required to advise the Crime Victims Board (Executive Law § 632-a [2] [a]). It is the role of the Board to then notify the victims of the crime of "such profits" (Executive Law § 632-a [2] [b]). Thereafter, "any crime victim* shall have the right to bring a civil action in a court of competent jurisdiction to recover money damages from a person convicted of a crime of which he or she is a victim, or the legal representative of that convicted person, within three years of the discovery of any profits of the crime" (Executive Law § 632-a [3]). The Board is not granted the authority to act on the victim's behalf until the crime victim gives notice to the Board that it has, or intends to file an action pursuant to the statute (Executive Law § 632-a [4], [5] [c]). Notification of the filing of the summons and complaint then allows the Board, under the statute, the right to assist the victim by seeking any provisional remedy that would be available to that plaintiff (Executive Law § 632-a [6]).

I concur with the majority that because the Crime Victims Board "has [not] received an application for or provided financial assistance or compensation" to a crime victim (Executive Law § 632-a [1] [c] [iv]), it does not have the authority and/or right to sue to recover any of the profits from the publication of Underboss (*ibid*).

ELLERIN and SAXE, JJ., concur with RUBIN, J.; NARDELLI, J. P., and MAZZARELLI, J., concur in a separate opinion by MAZZARELLI, J.

---

* The statute specifically defines "crime victim" as "(i) the victim of the offense; (ii) the representative of a crime victim [*see*, Executive Law § 621 (6) defining representative] * * * (iii) a good Samaritan * * * ["a person who, other than a law enforcement officer, acts in good faith (a) to apprehend a person who has committed a crime in his presence or who has in fact committed a felony, (b) to prevent a crime or an attempted crime from occurring, or (c) to aid a law enforcement officer in effecting an arrest" (Executive Law § 621 [7])]; (iv) the crime victims board or other governmental agency *that has received an application for or provided financial assistance or compensation to the victim*" (Executive Law § 632-a [1] [c]; emphasis supplied).