THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* LOUIS J. FARONE, Appellant.

Argued January 6, 1955; decided March 11, 1955.

*James F. Carroll* for appellant. I. Errors in drawing the jury compel reversal. The jury was not drawn by lot according ·to law. (*People* v. *Wallens,* 297 N. Y. 57; *People* v. *Brodlowicz,* 182 Misc. 351; *People* v. *Higgins,* 172 Misc. 613; *Matter of Leary,* 175 Misc. 254, 285 N. Y. 693; *Stokes* v. *People,* 53 N. Y. 164; *People ex rel. Cosgriff* v. *Craig,* 195 N. Y. 190; *People* v. *Damron,* 212 N. Y. 256; *Hildreth* v. *City of Troy,* 101 N. Y. 234; *People* v.

*McQuade,* 110 N. Y. 284; *People* v. *Fernandez,* 301 N. Y. 302.) II. The court erred in its handling of the trial jury. (*People ex rel. Munsell* v. *Court of Oyer & Terminer,* 36 Hun 277, 101 N. Y. 245; *Capitol Traction Co.* v. *Hof,* 174 U. S. 1; *People* v. *Marshall,* 282 App. Div. 36, 306 N. Y. 223; *People* v. *Cocco,* 305 N. Y. 282.) III. Defendant's counsel was denied the right to cross-examine witnesses in the jury inquiry. (*Matter of Friedel* v. *Board of Regents,* 296 N. Y. 347; *Remmer* v. *United States,* 347 U. S. 227.) IV. The misconduct of a juror and the procedure adopted by the court demand a reversal and new trial. (*Johnson* v. *Riter-Conley Mfg. Co.,* 149 App. Div. 543; *McHugh* v. *Jones,* 283 N. Y. 534; *People* v. *Leonti,* 262 N. Y. 256; *People* v. *Cocco,* 305 N. Y. 282.) V. The trial court erred in refusing to permit defense counsel to examine the Grand Jury minutes for the purpose of cross-examining the People's witnesses. (*Schwickert* v. *Levin,* 76 App. Div. 373; *Richardson* v. *Nassau Elec. R. R. Co.,* 190 App. Div. 529; *Miller* v. *Greenwald Petticoat Co.,* 192 App. Div. 559; *Sexton* v. *Onward Constr. Co.,* 93 App. Div. 143; *People* v. *Schainuck,* 286 N. Y. 161; *People* v. *Pauley,* 281 App. Div. 223; *People* v. *Miller,* 257 N. Y. 54; *Heggos* v. *Streeter,* 182 App. Div. 525.) VI. Defendant was prejudiced by the failure of the court to direct the People to serve an adequate bill of particulars. (*People* v. *Bogdanoff,* 254 N. Y. 16.) VII. The court erred in admitting testimony of acts, declarations and admissions of alleged coconspirators made prior to the alleged inception of the conspiracy. (*People* v. *Marshall,* 306 N. Y. 223; *People* v. *Kief,* 126 N. Y. 661; *Brown* v. *United States,* 150 U. S. 93; *Morrow* v. *United States,* 11 F. 2d 256; *Bartlett* v. *United States,* 166 F. 2d 920.) VIII. The Attorney-General made remarks in his summation which were prejudicial to defendant and warrant reversal. IX. Section 986 of the Penal Law is the book-making statute. It does not apply to gaming as such. (*People* v. *Laude,* 81 Misc. 256; *People ex rel. Lichtenstein* v. *Langan,* 196 N. Y. 260; *People* v. *Goldstein,* 295 N. Y. 61; *People* v. *Erickson,* 302 N. Y. 461; *Matter of Guardian Life Ins. Co. of America* v. *Chapman,* 302 N. Y. 226; *Matter of Sullivan Co.,* 289 N. Y. 110; *Langworthy* v. *Broomley,* 29 How. Prac. 92; *Mrowiec* v. *Polish Army Veterans Assn. of America,* 190 Misc. 423; *Liebman* v. *Miller,* 20 Misc. 705; *Wilkenfeld* v. *Attic Club,* 74 Misc. 543.) X. Convictions under section 986 and section 973

of the Penal Law are incompatible and cannot stand. (*People* v. *Stedeker,* 175 N. Y. 57; *People* v. *Bruno,* 281 App. Div. 941.) XI. Another penalty is provided for the crimes charged in these counts. Section 986 of the Penal Law does not apply. (*People* v. *Bright,* 203 N. Y. 73; *People* v. *Pauley,* 281 App. Div. 223.) XII. The common gambler counts in the three indictments should have been merged at the time of the consolidation of the three indictments for trial. (*Galtrof* v. *Levy,* 174 Misc. 1004; *People* v. *O'Malley,* 52 App. Div. 46.)

*Jacob K. Javits, Attorney-General* (*Arthur H. Christy* and *Daniel F. McMahon* of counsel), for respondent. I. Defendant's guilt was proved beyond a reasonable doubt. (*People* v. *Dixon,* 231 N. Y. 111; *People* v. *McCarthy,* 256 App. Div. 522; *People* v. *Sexton,* 187 N. Y. 495; *People* v. *Harris,* 136 N. Y. 423.) II. The trial court properly impaneled the trial jury. (*People* v. *Sprague,* 217 N. Y. 373; *People* v. *McQuade,* 110 N. Y. 284; *People* v. *Fernandez,* 301 N. Y. 302; *Hildreth* v. *City of Troy,* 101 N. Y. 234.) III. The trial court properly handled the allegation of misconduct against the trial juror. (*People* v. *Cocco,* 305 N. Y. 282; *People* v. *Sprague,* 217 N. Y. 373; *People* v. *Speigel,* 149 Misc. 439, 243 App. Div. 595; *People* v. *Lubin,* 190 App. Div. 339, 229 N. Y. 601; *People* v. *Leonti,* 262 N. Y. 256; *People* v. *McDuffee,* 270 App. Div. 1067, 271 App. Div. 760; *People* v. *Caputalo,* 138 Misc. 344, 233 App. Div. 706; *People* v. *Rosen,* 251 App. Div. 584.) IV. Defendant was properly convicted of violations of sections 970, 973 and 986 of the Penal Law. (*People* v. *Erickson,* 302 N. Y. 461; *People* v. *Callahan,* 281 N. Y. 726; *People* v. *Delore,* 281 N. Y. 726; *People* v. *Bruno,* 281 App. Div. 941; *People ex rel. Sturgis* v. *Fallon,* 152 N. Y. 1; *People* v. *Stedeker,* 175 N. Y. 57; *People* v. *Silver,* 251 App. Div. 309; *People* v. *Mumford,* 171 Misc. 397.) V. The court properly denied defendant access to the Grand Jury minutes. (*Matter of Montgomery,* 126 App. Div. 72; *People* v. *Walsh,* 262 N. Y. 140; *People* v. *Schainuck,* 286 N. Y. 161; *People* v. *Kreis,* 302 N. Y. 894; *People* v. *Miller,* 257 N. Y. 54; *People* v. *Kelley,* 253 App. Div. 430.) VI. The court's ruling on the motion for the bill of particulars was proper. (*People* v. *Parkinson,* 181 Misc. 603; *People* v. *Leary,* 282 App. Div. 476.) VII. The court properly admitted testimony of early coconspirators. (*People* v. *Luciano,* 277 N. Y. 348; *People* v. *McKane,* 143 N. Y. 455.)

VIII. Remarks of the Attorney-General in his summation were not improper. (*People* v. *Hines,* 284 N. Y. 93; *People* v. *Sprague,* 217 N. Y. 373.)

FROESSEL, J. In the course of the special investigation into gambling in Saratoga County ordered by former Governor Dewey, defendant was indicted for his activities in the operation of three gambling houses in Saratoga Springs — (1) Riley's Lake House, (2) The Brook and (3) Smith's Interlaken. There are three separate indictments (which were consolidated for the purposes of trial), one relating to each gambling house, and the several counts thereof are similar. In each indictment defendant was charged with one count of conspiracy (Penal Law, § 580), one count of being a common gambler (Penal Law, § 970), and one count of keeping a gaming and betting establishment (Penal Law, § 973). Then follows in each indictment a series of counts charging defendant with receiving and becoming the custodian of money bet and wagered (Penal Law, § 986). Each of the latter counts charges a different offense for every day of the period covered for each of the three gambling houses. In addition, there was one count in the Interlaken indictment charging defendant with keeping slot machines (Penal Law, § 982). All of the alleged crimes are misdemeanors.

The case was tried for four weeks at an Extraordinary Special and Trial Term of the Supreme Court. Defendant was found guilty as follows: conspiracy: three counts; common gambler: two counts; keeping a gaming and betting establishment: three counts; receiving bets and wagers: six counts. He was acquitted on one count of being a common gambler and on one count of receiving bets and wagers. The remaining counts were not submitted to the jury, having been dismissed by consent, on motion of the People, or otherwise. Except for a modification not in issue here, the Appellate Division affirmed the convictions.

In general, the evidence establishes that Riley's Lake House, The Brook and Smith's Interlaken were being operated as wide-open gambling casinos; that, although defendant was not the record holder of title to any of the three houses, he nevertheless held a beneficial interest in and controlled all of them; and that he performed various acts in the operation of at least two of

these houses.  Upon the evidence in this record, the jury had the right to find defendant guilty of the crimes of which he was convicted, except as hereinafter noted.  We turn, then, to the errors of law with which defendant claims his trial was afflicted.

We find no prejudicial error in the selection of the jury, in the trial court's disposition of the alternate juror's report to him in the presence of counsel, nor in the trial court's rulings with respect to the Grand Jury minutes.  Nor do we think that the common gambler counts should have been merged at the trial because, as claimed, they constitute a single crime.  Section 970 of the Penal Law provides, so far as pertinent here, that a " person who is the owner, agent or superintendent of *a* place * * * for gambling * * * is * * * guilty of a misdemeanor " (emphasis supplied).  Here the defendant was convicted of being the owner, agent or superintendent of two separate and distinct gambling casinos.  So far as this record shows, there is little or nothing to connect up defendant's separate operations so as to bring them within a single transaction.  We have examined the several other errors assigned, and find them to be insubstantial, save in one respect.

Defendant urges that his convictions under section 986 of the Penal Law cannot stand.  In counts 4, 8, 13 and 14 of the Riley indictment and counts 4 and 7 of the Interlaken indictment, defendant was charged with " Receiving Bets And Wagers and Becoming Custodian[s] of Money Bet And Wagered, in violation of Section 986 of the Penal Law ".  Defendant contends that section 986 is directed only against book-making and pool selling, and cannot be used to prosecute the type of gambling involved here, such as dice and roulette.

It is the theory of the People that the employees of the three gambling casinos received money wagered at the roulette and " crap " tables, and that defendant aided and abetted them in those acts.  Such acts according to the People are in violation of section 986, a statute admittedly dealing primarily with book-making and pool selling offenses, but part of whose language may, by omitting much of the book-making language, be read as follows: " any person who receives * * * any money * * * bet or wagered * * * by or for any other person * * * is guilty of a misdemeanor ".

If we should construe section 986 in the manner here urged by the People, the inevitable consequence would be an unprecedented extension of the scope of our penal laws against gambling. As the statute now reads, the only limitations upon the seemingly broad meaning of the words '' any person who receives * * * money * * * bet or wagered '' are those imposed by the context in which they appear — a context of book-making and pool selling provisions. Once removed from that context, nothing would remain which could rationally limit the application of those words only to professional gamblers. On the contrary, the words, when taken alone, would apply equally to *any* person — be he casual gambler or professional — who '' receives money bet or wagered '', i.e., collects on any kind of bet which he has won.

Unlike section 970 which applies only to common gamblers, and section 973 which punishes one who *keeps* a gaming house, section 986, so construed, would extend far beyond the bookmaker and pool seller — at whom it was originally aimed and against whom it has always been used — and would make it a criminal offense even to accept payment on a private bet with a friend on the outcome of the World Series or of a prize fight (cf. *People* v. *Solomon,* 296 N. Y. 220). Such an extension would be inconsistent with both the history and policy of our gambling laws. As we observed in *Watts* v. *Malatesta* (262 N. Y. 80, 82) : '' casual betting or gaming by individuals as distinguished from betting or gambling as a business or profession, is not a crime. (*People* v. *Stedeker,* 175 N. Y. 57; *People* v. *Bright,* 203 N. Y. 73; *People ex rel. Collins* v. *McLaughlin,* 128 App. Div. 599.) The distinction between the two species has long ' obtained in this state where ordinary betting has never been made a crime * * * while the keeping of a gambling house, selling lottery tickets and the profession of a common gambler have been subjected to severe punishment.' * * * The evil which the law chiefly condemns (N. Y. Const. art I, § 9) and makes criminal (Penal Law, art. 88) is betting and gambling organized and carried on as a systematic business.''

Indeed, the Appellate Division nearly fifty years ago, having been called upon to construe the precise language now under consideration, reviewed extensively the constitutional and statutory history of gambling in this State, and reached the

following conclusion, which is applicable as well to the instant case: " The statute is aimed at the stakeholder, the bookmaker and the poolseller. To construe the language in the manner contended for by the learned district attorney is to wrench words from the context, to violate the grammatical construction of the sentence, and to ignore the historical development of the statute and the obvious intention of the Legislature in the various enactments of which it is the ultimate result." *(People ex rel. Collins* v. *McLaughlin,* 128 App. Div. 599, 615, appeal dismissed 194 N. Y. 556.)

Judicial discussion of the history and purpose of section 986 (formerly Penal Code, § 351) clearly indicates that it was designed as a book-making statute (see Lincoln's Constitutional History of New York, Vol. III, pp. 49–52; *People ex rel. Collins* v. *McLaughlin, supra; People ex rel. Lichtenstein* v. *Langan,* 196 N. Y. 260; *People* v. *Stedeker,* 175 N. Y. 57). Even as recently as *People* v. *Erickson* (302 N. Y. 461), in holding that a defendant could be separately convicted for several different acts under section 986, we said, per DESMOND, J. (p. 465): " The statute, therefore, is much more than a statement that engaging in ' book-making ' is a misdemeanor, with particulars as to what constitutes ' book-making '. It is, rather, a listing of a number of different kinds of acts or conduct, *all of them related to ' book-making ',* but each of which is, separately, made a misdemeanor." (Emphasis supplied.) It is significant that when the Legislature has chosen to include " gaming " with racing or other bets or wagers, it has specifically said so (Penal Law, § 991). Moreover, section 986 has its own provision against keeping a house or place for " any " of the " purposes " mentioned therein, and if it applied to this case a prosecution under section 973 could not also lie. Common gamblers, gambling establishments, gambling implements and devices and illegal gaming are provided for by sections 970–973 and 977–980; " policy " is governed by sections 974–976 of the Penal Law.

The People's argument with respect to section 986 runs counter not only to the history, policy and long-established construction of our gambling laws, but also to the general rule requiring us strictly to construe penal statutes in favor of an accused. We therefore conclude that defendant's convictions under section 986 of the Penal Law should be reversed, that those

six counts of the indictments should be dismissed, and that in all other respects the judgment should be affirmed.

The judgment of the Appellate Division should be modified in accordance with the opinion herein and, as so modified, affirmed.

CONWAY, Ch. J., DESMOND, DYE, FULD, VAN VOORHIS and BURKE, JJ., concur.

Judgment accordingly.