The People of the State of New York, Appellant, v Julio Marrero, Respondent.

First Department, December 11, 1979

### APPEARANCES OF COUNSEL

*Benjamin H. Green* of counsel (*Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney*), for appellant.

*Arlen S. Yalkut* for respondent.

### OPINION OF THE COURT

Lupiano, J.

Defendant, employed as a Federal corrections officer in Danbury, Connecticut, was found to be in possession of a loaded .38 caliber pistol on December 19, 1977, while in a social club located at 207 Madison Street, New York City. This resulted in an indictment charging defendant with criminal

possession of a weapon in the third degree pursuant to section 265.02 of the Penal Law. The sole issue on appeal is whether the defendant is exempt from prosecution pursuant to section 265.20 (subd a, par 1, cl [a]) of the Penal Law which in pertinent part provides that the offense for which defendant was indicted shall not apply to "peace officers as defined in subdivision thirty-three of section 1.20 of the criminal procedure law". Relevant to defendant's status, CPL 1.20 (subd 33, par [h]) enumerates as being peace officers "[a]n attendant, or an official, or guard of any state prison or of any penal correctional institution". In dismissing the indictment on defendant's motion to dismiss, the Supreme Court found CPL 1.20 (subd 33, par [h]) to be ambiguous in that the adjective "state" may be construed as modifying only the term "prison" and not the term "any penal correctional institution." Having found such ambiguity, the court chose to resolve it in defendant's favor by concluding that as defendant was a Federal corrections officer, he was entitled to the statutory exemption.

In thus construing the afore-mentioned subdivision of CPL 1.20, the court effected an inconsistency within the exemption statute itself—section 265.20 of the Penal Law. To illustrate: the first two categories of *persons* exempted under section 265.20 of the Penal Law are delineated under paragraph 1 of subdivision a as follows:

"(a) Persons in the military service of the state of New York when duly authorized by regulations issued by the chief of staff to the governor to possess the same, members of the division of state police, and peace officers as defined in subdivision thirty-three of section 1.20 of the criminal procedure law and persons appointed as railroad policemen pursuant to section eighty-eight of the railroad law.

"(b) Persons in the military or other *service of the United States,* in pursuit of official duty or when duly authorized by federal law, regulation or order to possess the same" (emphasis supplied).

The exemption provided by clause (b) patently applies to all in-Federal service and, therefore, embraces defendant. By viewing CPL 1.20 (subd 33, par [h]) as containing an ambiguity, and by construing that ambiguity in such manner as to afford to defendant an exemption by virtue of peace officer status without regard to his status as a Federal employee, an inconsistency in the statutory scheme was created whereby a select category of Federal employees was carved out of a

.blanket provision of the exemption statute (Penal Law, § 265.20, subd a, par 1, cl [b]).

It suffices to note the following well-recognized principles of statutory construction and interpretation: "All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof" (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, subd a). Scrutiny of section 88 of the Railroad Law and the textual keys of section 265.20 of the Penal Law mandate the reasoned conclusion that section 265.20 (subd a, par 1, cl [a]) of the Penal Law refers to service related to New York State as compared to or contrasted with Federal service which is the province of clause (b) of paragraph 1.

"Conflicting intentions in the same statute are never to be supposed or so regarded, unless forced on the court by unambiguous language" (McKinney's Cons Laws of NY, Book 1, Statutes, § 98, subd b; see, also, *Long Is. Trust Co. v Porta Aluminum Corp.,* 44 AD2d 118, 122-123). The wisdom of this common-sense rule of construction as applied to the instant matter is highlighted by Federal authority to the effect that a Federal agent is not a peace officer within the meaning of CPL 1.20 (subd 33) *(United States v Viale,* 312 F2d 595, 599,[1] cert den 373 US 903; *United States v Heliczer,* 373 F2d 241, 244, n 2, cert den 388 US 917). Also, in an informal opinion, the Attorney-General of the New York State was of the view that in the absence of specific Federal authority, an off-duty Federal corrections officer may not possess or carry a weapon as defined in article 265 of the Penal Law (1978 Atty Gen [Inf Opns], p 126). In this informal opinion it was aptly noted that "[t]he CPL applies only to the authority to enforce and implement New York State law and does not include Federal law or Federal corrections officers. Therefore * * * paragraph (h) [of CPL 1.20, subd 33] refers only to State or local municipal employees."

Further support for the conclusion that the status of peace officer envisioned by the Legislature in subdivision a (par 1, cl [a]) of the exemption statute (Penal Law, § 265.20) applies only to *New York* officers, is demonstrated by the fact that additional special provisions were provided for *both* Federal and

---

1. This case involved application of section 154 of the Code of Criminal Procedure, predecessor statute to CPL 1.20 (subd 33).

out-of-State officers (Penal Law, § 265.20, subd a, par 1, cl [b], subd a, par 11). Indeed, the legislative history of section 265.20 (subd a, par 11) of the Penal Law (which confers a limited exemption upon officers from another State) reveals that it was added not to limit a pre-existing blanket immunity for all peace officers, regardless of the jurisdiction by which they were employed, but rather to permit officers from *another* State for the first time to possess weapons in New York.[2]

Assuming the exemption statute (Penal Law, § 265.20) to be ambiguous insofar as the term "peace officer" utilized in clause (a) (subd a, par 1) is concerned (i.e., whether it applies to peace officers generally or to New York peace officers), the maxim *noscitur a sociis,* which literally means "it is known from its associates", is applied as a rule of statutory construction (McKinney's Cons Laws of NY, Book 1, Statutes, § 239). Clause (a) (subd a, par 1) refers to four classes: persons in military service of the State of New York, in the division of New York State Police, appointed as railroad policemen by the Superintendent of New York State Police and peace officers as defined in CPL 1.20 (subd 33). Since three of the four classes clearly relate to New York State, the tenet *noscitur a sociis,* embodying as it does a rule of common sense, warrants the conclusion that the peace officer exemption envisioned in clause (a) (subd a, par 1) similarly relates to New York peace officers and not Federal peace officers who are particularly embraced within clause (a) (subd a, par 1) and peace officers of another State who are particularly embraced within paragraph 11 of subdivision a.

Again, assuming the ambiguity of the term "peace officer" in clause (a) (subd a, par 1), to give it a general meaning in light of the particular classes embraced therein and of the following subdivisions particularly relating to Federal employees and other State officers would result in the same conclusion, to wit, that defendant is covered by the particular clause (b) (subd a, par 1) and not by clause (a) (subd a, par 1). This necessarily follows from the well-recognized rule of statutory construction that where the Legislature enacts a specific

2. The memorandum of the State Executive Department discloses that the purpose of this subdivision was "[t]o allow *peace officers* and police officers *from other states* to carry firearms while in this State on official business" (emphasis supplied) as "[t]he law presently makes no provision for the possession of firearms by police officers or *peace officers from other states* who enter this State on official business" (emphasis supplied) (McKinney's Session Laws, 1976, p 2351).

provision directed at a particular class, and a more general provision in the same statute which might appear to encompass that class, the specific provision will be applied *(People ex rel. Davidson v Gilon,* 126 NY 147, 156; McKinney's Cons Laws of NY, Book 1, Statutes, § 238).

Thus we conclude that the clear intent of section 265.20 of the Penal Law was to provide persons in the service of the United States (as is defendant) immunity from prosecution for weapon possession when that possession is duty-related or duly authorized by Federal law, regulation or order (subd a, par 1, cl [b]).

Defendant's contention that he believed himself exempt from prosecution for possession of a weapon by reason of section 265.20 (subd a, par 1, cl [a]), which belief was allegedly reinforced by advice from a gun dealer to the effect that other Federal corrections officers carried weapons without a license based on "peace officer" status may be, at best, a possible defense (see Penal Law, § 15.20).

Accordingly, the order, Supreme Court, New York County (MILONAS, J.), entered May 3, 1978, which dismissed an indictment charging the defendant with criminal possession of a weapon in the third degree, should be reversed, on the law, and the indictment reinstated.

LYNCH, J. (dissenting). We dissent and would affirm.

If we accord to section 265.20 (subd a, par 1, cl [a]) of the Penal Law the plain meaning of its unambiguous language, the defendant, employed as a Federal corrections officer in Connecticut, is exempt from criminality for possessing a loaded pistol on a social occasion in New York, because he is a peace officer, being an attendant, official or guard of "any penal correctional institution" (CPL 1.20, subd 33, par [h]). It is only by looking further—why should one look further, with the answer already in hand?—that one would discover that clause (b) seems to contradict clause (a) by making the defendant's conduct criminal because at the time he was not on official duty in his Federal employment.

Ordinarily, when confronted by two provisions of the same statute, one conveying to the mind one thing and the other something opposite, a legal scholar is able to research the principles of statutory construction and in the quiet of the library indulge himself in an act of ratiocination to conclude that one provision must yield to the other. We would be

wholly in agreement with this method of resolution so ably accomplished by the majority opinion were we not dealing with a penal statute. Where a defendant is threatened by a loss of his liberty, here up to seven years, we do not find that the law requires his fate should hang on a statute so drawn that it would exculpate him in one provision, inculpate him in another, and then leave it to an exercise in legal research to determine which should prevail. Faced with such statute we find that we are required to opt for " 'that construction which operates in favor of life or liberty' " *(People ex rel. Carollo v Brophy,* 294 NY 540, 545, quoting *Commonwealth v Martin,* 17 Mass 359, 362).

While penal statutes are subject to the general rules of construction (McKinney's Cons Laws of NY, Book 1, Statutes, § 272), because of their distinctive nature they are also subject to special rules to which we resort (McKinney's Cons Laws of NY, Book 1, Statutes, §§ 271-276). The language of such a statute must be addressed to the ordinary member of society, the reasonable man, not to the legal scholar. "The penal statute must be sufficiently definite, clear and positive to give unequivocal warning to citizens of the rule which is to be obeyed, and the conduct which is condemned or prohibited, so that the ordinary member of society may know how to comply therewith * * * A test as to whether words of a statute are sufficient and clear as to what is prohibited is whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and that which is required of him" (McKinney's Cons Laws of NY, Book 1, Statutes, § 271, subd d). Penal statutes cannot stand "if the class of person coming within their ambit is so vaguely defined as to make it unclear to potential violators just what conduct will subject them to criminal liability and what will not" *(Fenster v Leary,* 20 NY2d 309, 314). They must be explicit and informative on their face *(People v Diaz,* 4 NY2d 469, 470).

Given its contradictory provisions respecting the defendant, we cannot hold section 265.20 of the Penal Law to be explicit or informative on its face or that it is "definite, clear and positive [or that it gives] unequivocal warning" to "the ordinary member of society", "the reasonable man" or to "potential violators". Since penal statutes should be strictly construed in favor of the accused (McKinney's Cons Laws of NY, Book 1, Statutes, § 271, subd a; *People v Farone,* 308 NY 305, cert den 350 US 828), we are in accord with the sentiment

expressed by the court at the criminal motion term herein, "[W]henever there is a statute as ambiguously drawn as the one involved here, this court is not inclined to choose an interpretation that will operate to the detriment of the defendant" (94 Misc 2d 367, 368).

SULLIVAN and LANE, JJ., concur with LUPIANO, J.; FEIN, J. P., and LYNCH, J., dissent in an opinion by LYNCH, J.

Order, Supreme Court, New York County, entered on May 3, 1978, reversed, on the law, and the indictment reinstated.