Hancock, Jr., J.
(dissenting). The rule adopted by the majority prohibiting the defense of mistake of law under Penal Law § 15.20 (2) (a) in the circumstances here is directly contrary to the plain dictates of the statute and a rejection of the jurisprudential reforms and legislative policies underlying its enactment. For these reasons, as more fully explained herein, we cannot agree with this decision.
I
The basic difference which divides the court may be simply put. Suppose the case of a man who has committed an act which is criminal not because it is inherently wrong or immoral but solely because it violates a criminal statute. He has committed the act in complete good faith under the mistaken but entirely reasonable assumption that the act does not constitute an offense because it is permitted by the wording of the statute. Does the law require that this man be punished? The majority says that it does and holds that (1) Penal Law § 15.20 (2) (a) must be construed so that the man is precluded from offering a defense based on his mistake of law and (2) such construction is compelled by prevailing considerations of public policy and criminal jurisprudence. We take issue with the majority on both propositions.
There can be no question that under the view that the purpose of the criminal justice system is to punish blamewor *393 thiness or "choosing freely to do wrong”,[1] our supposed man who has acted innocently and without any intent to do wrong should not be punished (see, United States v Barker, 514 F2d 208, 228-229 [Bazelon, Ch. J., concurring]). Indeed, under some standards of morality he has done no wrong at all (Patterson, Cardozo’s Philosophy of Law, Part II, 88 U Pa L Rev 156, 169-171 [1939-1940]).[2] Since he has not knowingly committed a wrong there can be no reason for society to exact retribution. Because the man is law-abiding and would not have acted but for his mistaken assumption as to the law, there is no need for punishment to deter him from further unlawful conduct. Traditionally, however, under the ancient rule of Anglo-American common law that ignorance or mistake of law is no excuse, our supposed man would be punished.
The maxim "ignorantia legis neminem excusat”[3] finds its roots in Medieval law when the "actor’s intent was irrelevant since the law punished the act itself” (United States v Barker, supra, at 228 [Bazelon, Ch. J., concurring]; emphasis in original; see, Keedy, Ignorance and Mistake in the Criminal Law, 22 Harv L Rev 75, 81 [1908]) and when, for example, the law recognized no difference between an intentional killing and one that was accidental (Ames, Law and Morals, 22 Harv L Rev 97, 98 [1908]). Although the common law has gradually evolved from its origins in Anglo-Germanic tribal law[4] (adding the element of intent [mens rea] and recognizing defenses based on the actor’s mental state — e.g., justification, insanity and intoxication) the dogmatic rule that ignorance or mistake of law is no excuse has remained unaltered. Various justifications have been offered for the rule, but all are frankly pragmatic and utilitarian — preferring the interests of society *394 (e.g., in deterring criminal conduct, fostering orderly judicial administration, and preserving the primacy of the rule of law)[5] to the interest of the individual in being free from punishment except for intentionally engaging in conduct which he knows is criminal (see, White, Reliance on Apparent Authority as a Defense to Criminal Prosecution, 77 Colum L Rev 775, 784-789 [1977]; Perkins, Ignorance and Mistake in Criminal Law, 88 U Pa L Rev 35, 40, 41 [1939]; Ryu and Silving, Error Juris: A Comparative Study, 24 U Chi L Rev 421, 431-434 [1957]; United States v Barker, supra, at 230-232 [Bazelon, Ch. J., concurring]).
Today there is widespread criticism of the common-law rule mandating categorical preclusion of the mistake of law defense (see, e.g., White, op. cit., 77 Colum L Rev 775, 784; Note, Proposed Penal Law of New York, 64 Colum L Rev 1469, 1486; Model Penal Code § 2.04, comment 3, at 274-276 [Official Draft and Revised Comments 1985]). The utilitarian arguments for retaining the rule have been drawn into serious question (see, LaFave and Scott, Substantive Criminal Law § 5.1; Jeffries, Legality, Vagueness, and the Construction of Penal Statutes, 71 U Va L Rev 189, 208, 209 [1985]; White, op. cit, at 785-787; Perkins, op. cit., 88 U Pa L Rev 35, 51-53; United States v Barker, 514 F2d 208, 228-231 [Bazelon, Ch. J., concurring], supra) but the fundamental objection is that it is simply wrong to punish someone who, in good-faith reliance on the wording of a statute, believed that what he was doing was lawful. It is contrary to "the notion that punishment should be conditioned on a showing of subjective moral blameworthiness” (White, op. cit., at 784). This basic objection to the maxim "ignorantia legis neminem excusat” may have had less force in ancient times when most crimes consisted of acts *395 which by their very nature were recognized as evil (malum in se) (id., at 784). In modern times, however, with the profusion of legislation making otherwise lawful conduct criminal (malum prohibitum), the "common law fiction that every man is presumed to know the law has become indefensible in fact or logic” (id., at 784; see, Note, Proposed Penal Law of New York, op. cit., at 1486; Ryu and Silving, op. cit., 24 U Chi L Rev 421, 433, 434 [1957]; United States v Barker, supra, at 228-232 [Bazelon, Ch. J., concurring]).[6]
With this background we proceed to a discussion of our disagreement with the majority’s construction of Penal Law § 15.20 (2) (a) and the policy and jurisprudential arguments made in support of that construction. There are two grounds for our dissent: *396 which the Legislature has considered and rejected in its decision to abandon the unqualified common-law rule in favor of permitting a limited mistake of law defense in the circumstances presented here.
*395 (1) that the majority’s construction of Penal Law § 15.20 (2) (a) is directly contrary to the plain wording of the statute, renders the statute ineffective and deprives it of any meaning, and superimposes on the language of the statute a limitation found in the language of Model Penal Code § 2.04 (3) (b) which the Legislature has specifically rejected; and
(2) that the policy and jurisprudential reasons advanced by the majority for its rejection of what appears to be the clear intendment of Penal Law § 15.20 (2) (a) are the very reasons
*396 II
Penal Law § 15.20 (effect of ignorance or mistake upon liability), in pertinent part, provides: "2. A person is not relieved of criminal liability for conduct because he engages in such conduct under a mistaken belief that it does not, as a matter of law, constitute an offense, unless such mistaken belief is founded upon an official statement of the law contained in (a) a statute or other enactment”.
It is fundamental that in interpreting a statute, a court should look first to the particular words of the statute in question, being guided by the accepted rule that statutory language is generally given its natural and most obvious meaning (see, Price v Price, 69 NY2d 8, 15, 16; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 232). Here, there is but one natural and obvious meaning of the statute: that if a defendant can establish that his mistaken belief was "founded upon” his interpretation of "an official statement of the law contained in * * * statute” (Penal Law § 15.20 [2] [a]), he should have a defense. No other natural and obvious meaning has been suggested.
It is difficult to imagine a case more squarely within the wording of Penal Law § 15.20 (2) (a) or one more fitted to what appears clearly to be the intended purpose of the statute than the one before us. For this reason it is helpful to discuss the statute and its apparent intended effect in the light of what defendant contends was his mistaken belief founded on an official statement of the law contained in a statute.
Defendant stands convicted after a jury trial of criminal possession of a weapon in the third degree for carrying a loaded firearm without a license (Penal Law § 265.02). He concedes that he possessed the unlicensed weapon but maintains that he did so under the mistaken assumption that his conduct was permitted by law. Although at the time of his arrest he protested that he was a Federal corrections officer and exempt from prosecution under the statute, defendant was charged with criminal possession of a weapon in the third degree. On defendant’s motion before trial the court dismissed the indictment, holding that he was a peace officer as defined *397 by CPL 2.10 (25) and, therefore, exempted by Penal Law § 265.20 from prosecution under Penal Law § 265.02 (94 Misc 2d 367).[7] The People appealed and the Appellate Division reversed and reinstated the indictment by a 3-2 vote (71 AD2d 346).[8] Defendant’s appeal to this court was dismissed for failure to prosecute and the case proceeded to trial. The trial court rejected defendant’s efforts to establish a defense of mistake of law under Penal Law § 15.20 (2) (a). He was convicted and the Appellate Division has affirmed.
Defendant’s mistaken belief that, as a Federal corrections officer, he could legally carry a loaded weapon without a license was based on the express exemption from criminal liability under Penal Law § 265.02 accorded in Penal Law § 265.20 (a) (1) (a) to "peace officers” as defined in the Criminal Procedure Law and on his reading of the statutory definition for "peace officer” in CPL 2.10 (25) as meaning a correction officer "of any penal correctional institution” (emphasis added), including an institution not operated by New York State. Thus, he concluded erroneously that, as a corrections officer in a Federal prison, he was a "peace officer” and, as such, exempt by the express terms of Penal Law § 265.20 (a) (1) (a). This mistaken belief, based in good faith on the statute defining "peace officer” (CPL 2.10 [25]), is, defendant contends, the precise sort of "mistaken belief * * * founded upon an official statement of the law contained in * * * a statute or other enactment” which gives rise to a mistake of law defense under Penal Law § 15.20 (2) (a). He points out, of course, that when he acted in reliance on his belief he had no way of foreseeing that a court would eventually resolve the question of the statute’s meaning against him and rule that his belief had been mistaken, as three of the five-member panel at the Appellate Division ultimately did in the first appeal (see, People v Marrero, 71 AD2d 346, supra).
*398 The majority, however, has accepted the People’s argument that to have a defense under Penal Law § 15.20 (2) (a) "a defendant must show that the statute permitted his conduct, not merely that he believed it did” (respondent’s brief, at 26 [emphasis added]). Here, of course, defendant cannot show that the statute permitted his conduct. To the contrary, the question has now been decided by the Appellate Division and it is settled that defendant was not exempt under Penal Law § 265.20 (a) (1) (a). Therefore, the argument goes, defendant can have no mistake of law defense. While conceding that reliance on a statutory provision which' is later found to be invalid would constitute a mistake of law defense (see, Model Penal Code § 2.04 [3] [b] [i]), the People’s flat position is that "one’s mistaken reading of a statute, no matter how reasonable or well intentioned, is not a defense” (respondent’s brief, at 27).
Nothing in the statutory language suggests the interpretation urged by the People and adopted by the majority: that Penal Law § 15.20 (2) (a) is available to a defendant not when he has mistakenly read a statute but only when he has correctly read and relied on a statute which is later invalidated (respondent’s brief, at 26). Such a construction contravenes the general rule that penal statutes should be construed against the State and in favor of the accused (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 271) and the Legislature’s specific directive that the revised Penal Law should not be strictly construed but "must be construed according to the fair import of [its] terms to promote justice and effect the objects of the law” (Penal Law § 5.00).[9]
More importantly, the construction leads to an anomaly: only a defendant who is not mistaken about the law when he acts has a mistake of law defense. In other words, a defendant can assert a defense under Penal Law § 15.20 (2) (a) only when his reading of the statute is correct — not mistaken. Such construction is obviously illogical; it strips the statute of the very effect intended by the Legislature in adopting the mis *399 take of law defense. The statute is of no benefit to a defendant who has proceeded in good faith on an erroneous but concededly reasonable interpretation of a statute, as defendant presumably has. An interpretation of a statute which produces an unreasonable or incongruous result and one which defeats the obvious purpose of the legislation and renders it ineffective should be rejected (see, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 96, 143, 144, 145).
Finally, the majority’s disregard of the natural and obvious meaning of Penal Law § 15.20 (2) (a) so that a defendant mistaken about the law is deprived of a defense under the statute amounts, we submit, to a rejection of the obvious legislative purposes and policies favoring jurisprudential reform underlying the statute’s enactment. It is self-evident that in enacting Penal Law § 15.20 (2) as part of the revision and modernization of the Penal Law (L 1965, ch 1030) the Legislature intended to effect a needed reform by abolishing what had long been considered the unjust archaic common-law rule totally prohibiting mistake of law as a defense. Had it not so intended it would simply have left the common-law rule intact. In place of the abandoned ”ignorantia legis” common-law maxim the Legislature enacted a rule which permits no defense for ignorance of law but allows a mistake of law defense in specific instances, including the one presented here: when the defendant’s erroneous belief is founded on an "official statement of the law” (see, Note, Proposed Penal Law of New York, 64 Colum L Rev 1469, 1485, 1486).
This reform, like the changes adopted in Model Penal Code § 2.04 (3) and those proposed by various legal commentators, was prompted by the prevailing dissatisfaction with the common-law rule (see, Model Penal Code § 2.04, comment 3, at 274-276 [Official Draft and Revised Comments 1985]; Note, op. cit., 64 Colum L Rev 1469, 1485, 1486). Both the Model Penal Code and Penal Law § 15.20 (2) accept the general concept that the outright prohibition of the mistake of law defense under the common law should be replaced with a rule permitting "a limited defense based on a reasonable belief on the part of the defendant that the law is such that his conduct does not constitute an offense” (Model Penal Code § 2.04, comment 3, at 274 [Official Draft and Revised Comments 1985]; see, Hechtman, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 15.20, at 36-37).
The majority construes the statute, however, so as to rule *400 out any defense based on mistake of law. In so doing, it defeats the only possible purpose for the statute’s enactment and resurrects the very rule which the Legislature rejected in enacting Penal Law § 15.20 (2) (a) as part of its modernization and reform of the Penal Law. It is fundamental that a construction of a statute which does not further the statute’s object, spirit and purpose must be rejected (see, Price v Price, 69 NY2d 8, 16, supra; Matter of Petterson v Daystrom Corp., 17 NY2d 32, 38, 39; Matter of New York Post Corp. v Leibowitz, 2 NY2d 677, 685, 686; People v Ryan, 274 NY 149, 152; McKinney’s Cons Laws of NY, Book 1, Statutes § 96).
Although expressing its evident conviction that the statute should be treated as an "exceptional exculpatory concept * * * intended to be a very narrow escape valve” (majority opn, at 387), the majority cites no language in the statute or in the legislative history supporting its views or the construction of Penal Law § 15.20 (2) (a) which seems so contrary to the statute’s plain language and evident purpose. Despite the assertion that such construction reflects "appropriate precedential awareness” (id., at 389), the majority cites no precedential authority.
Instead, the majority bases its decision on an analogous provision in the Model Penal Code and concludes that despite its totally different wording and meaning Penal Law § 15.20 (2) (a) should be read as if it were Model Penal Code § 2.04 (3) (b) (i). But New York in revising the Penal Law did not adopt the Model Penal Code. As in New Jersey, which generally adopted the Model Penal Code but added one section which is substantially more liberal,[10] New York followed parts of the Model Penal Code provisions and rejected others. In People v Goetz (68 NY2d 96), we said that the Legislature’s rejection of the verbatim provisions of the Model Penal Code was crucial in determining its intent in drafting the statute.[11] The signifi *401 canee of the alterations here can be no different.
While Penal Law § 15.20 (2) and Model Penal Code § 2.04 are alike in their rejection of the strict common-law rule, they are not alike in wording and differ significantly in substance. The Model Penal Code provides a limited defense for ignorance of the law (Model Penal Code § 2.04 [3] [a]). Penal Law § 15.20 (2) omits any such defense. In respect to the defense based upon an actor’s reliance on an official statement of law contained in a statute the Model Penal Code and the New York statute are totally dissimilar (compare, Model Penal Code § 2.04 [3] [b] [i], to Penal Law § 15.20 [2] [a]). The Model Penal Code does not permit a defense for someone who acts in good faith upon a mistaken belief that a specific statute authorizes his conduct.[12] The defense is limited to an act in reliance on an official statement of law in a statute "afterward determined to be invalid or erroneous” (Model Penal Code § 2.04 [3] [b]; emphasis added). The New York statute, in contrast, specifically permits the defense when the actor proceeds under "a mistaken belief” that his conduct does not "constitute an offense” when that "mistaken belief is founded upon an official statement of the law contained in * * * a statute” (Penal Law § 15.20 [2] [a]; emphasis added).
Thus, the precise phrase in the Model Penal Code limiting the defense under section 2.04 (3) (b) (i) to reliance on a statute "afterward determined to be invalid or erroneous” which, if present, would support the majority’s narrow construction of the New York statute, is omitted from Penal Law § 15.20 (2) (a). How the Legislature can be assumed to have enacted the very language which it has specifically rejected is not explained (see, People v Goetz, 68 NY2d 96, 109, 110, supra; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 240, at 413).
As an alternate interpretation of Penal Law § 15.20 (2) (a) the majority suggests that the Legislature intended that the statute should afford a defense only in cases involving acts *402 mala in se such as People v Weiss (276 NY 384 [involving kidnapping charges]) "where specific intent is an element of the offense” (majority opn, at 391). Again such construction is at odds with the plain wording of Penal Law § 15.20 (2) (a) and finds no support in the statutory history or the literature. There are, moreover, other fundamental objections to such construction which, we believe, rule out any possibility that the Legislature could have intended it. The essential quality of evil or immorality inherent in crimes mala in se (murder, robbery, kidnapping, etc.) is incompatible with the notion that the actor could have been operating "under a mistaken belief that [his conduct] [did] not, as a matter of law, constitute an offense” (Penal Law § 15.20 [2] [a]). There are no policy or jurisprudential reasons for the Legislature to recognize a mistake of law defense to such crimes. On the contrary, it is not with such inherently evil crimes but with crimes which are mala prohibita — i.e., "the vast network of regulatory offenses which make up a large part of today’s criminal law” (LaFave and Scott, Substantive Criminal Law § 5.1, at 587-588; see, White, op. cit, 77 Colum L Rev 775, 784) — where reasons of policy and fairness call for a relaxation of the strict "ignorantia legis” maxim to permit a limited mistake of law defense.
Nor does it seem possible that the Legislature could have intended to permit a mistake of law defense only in the limited circumstance where it had already been permitted prior to the enactment of the statute, i.e., to negate a specific element of the charge (see, People v Weiss, supra). Such a reading, contrary to the statute’s plain meaning, makes Penal Law § 15.20 (2) (a) superfluous. While it is quite true that New York has followed the Model Penal Code in codifying the "ignorantia legis” maxim as the basic rule (see, majority opn, at 387; dissenting opn, at 395-396) we are concerned here not with the basic rule but with the modifications and exceptions to that rule enacted in Penal Law § 15.20 (2). It is only through these limited exceptions that the easing of the common-law rule is effected. Reading the statute merely as a codification of People v Weiss (supra) would amount to a total rejection of the legislative purpose of effecting this needed jurisprudential reform. The interpretation is contrary to accepted canons of statutory construction (McKinney’s Cons Laws of NY, Book 1, Statutes §§ 94, 95, 96, 143, 145).
*403 Ill
Any fair reading of the majority opinion, we submit, demonstrates that the decision to reject a mistake of law defense is based on considerations of public policy and on the conviction that such a defense would be bad, rather than on an analysis of CPL 15.20 (2) (a) under the usual principles of statutory construction (see, majority opn, at 390-391). The majority warns, for example, that if the defense were permitted "the exception would swallow the rule”; that "[mistakes about the law would be encouraged”; that an "infinite number of mistake of law defenses * * * could be devised”; and that "wrongminded individuals [could] contrive in bad faith solely to get an exculpatory notion before the jury.” (Majority opn, at 391, 392.)
These considerations, like the People’s argument that the mistake of law defense " 'would encourage ignorance where knowledge is socially desired’ ” (respondent’s brief, at 28), are the very considerations which have been consistently offered as justifications for the maxim "ignorantia legis”. That these justifications are unabashedly utilitarian cannot be questioned. It could not be put more candidly than by Justice Holmes in defending the common-law maxim more than 100 years ago: "Public policy sacrifices the individual to the general good * * * It is no doubt true that there are many cases in which the criminal could not have known that he was breaking the law, but to admit the excuse at all would be to encourage ignorance where the law-maker has determined to make men know and obey, and justice to the individual is rightly outweighed by the larger interests on the other side of the scales” (Holmes, The Common Law, at 48 [1881]; emphasis added). Regardless of one’s attitude toward the acceptability of these views in the 1980’s, the fact remains that the Legislature in abandoning the strict "ignorantia legis” maxim must be deemed to have rejected them.
We believe that the concerns expressed by the majority are matters which properly should be and have been addressed by the Legislature. We note only our conviction that a statute which recognizes a defense based on a man’s good-faith mistaken belief founded on a well-grounded interpretation of an official statement of the law contained in a statute is a just law. The law embodies the ideal of contemporary criminal jurisprudence "that punishment should be conditioned on a showing of subjective moral blameworthiness” (White, op. cit, 77 Colum L Rev 775, 784).
It is no answer to protest that the defense may become a *404 "false and diversionary stratagem[ ]” or that "wrongminded individuals [could] contrive” an "infinite number of mistake of law defenses” (majority opn, at 392); for it is the very business of the courts to separate the true claims from the false. Such in terrorem arguments should have no more force here than similar objections which doubtless were voiced with equal intensity to the long-accepted defenses of justification, accident, mistake of fact, insanity, entrapment, duress and intoxication. As Justice Holmes wrote in commenting on John Austin’s argument that permitting the mistake of law defense would present courts with problems they were not prepared to solve: "If justice requires the fact to be ascertained, the difficulty of doing so is no ground for refusing to try” (Holmes, The Common Law, at 48 [1881]).
IV
If defendant’s offer of proof is true, his is not the case of a "free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong” (Pound, Introduction to Sayre, Cases on Criminal Law [1927], quoted in Morissette v United States, 342 US 246, 250, n 4). He carried the gun in the good-faith belief that, as a Federal corrections officer, it was lawful for him to do so under the words of the statute (Penal Law § 265.20 [a] [1] [former a]; CPL 2.10, 1.20 [see, dissenting opn, at 397, n 7). That his interpretation of the statute as exempting corrections officers (whether or not employed in a State facility) was a reasonable one can hardly be questioned. If the statute does not plainly say that corrections officers are exempt, as defendant contends, the statute at the very least is ambiguous and clearly susceptible to that interpretation. Indeed, Supreme Court in dismissing the indictment (94 Misc 2d 367) and two of the five-member panel in the first appeal to the Appellate Division (71 AD2d 346) read the statute as it was read by defendant and the police officials and others whose opinions he sought. We believe that under our present Penal Law and the policies underlying its revision (L 1965, ch 1030) this defendant should not be found guilty of violating Penal Law § 265.02 if he can establish that his conduct was based on a good-faith mistake of law founded on the wording of the statute.
We do not believe that permitting a defense in this case will produce the grievous consequences the majority predicts. The unusual facts of this case seem unlikely to be repeated. *405 Indeed, although the majority foresees "an infinite number of mistake of law defenses” (majority opn, at 392), New Jersey, which adopted a more liberal mistake of law statute in 1978, has apparently experienced no such adversity (no case construing that law is mentioned in the most recent annotation of the statute; see, dissenting opn, at 400, n 10).[13] Nor is there any reason to believe that courts will have more difficulty separating valid claims from "diversionary stratagem[s]” in making preliminary legal determinations as to the validity of the mistake of law defense than of justification or any other defense.
But these questions are now beside the point, for the Legislature has given its answer by providing that someone in defendant’s circumstances should have a mistake of law defense (Penal Law § 15.20 [2] [a]). Because this decision deprives defendant of what, we submit, the Legislature intended that he should have, we dissent.
There should be a reversal and defendant should have a new trial in which he is permitted to assert a defense of mistake of law under Penal Law § 15.20 (2) (a).
Chief Judge Wachtler and Judges Simons and Titone concur with Judge Bellacosa; Judge Hancock, Jr., dissents and votes to reverse in a separate opinion in which Judges Kaye and Alexander concur.
Order affirmed.

."Historically, our substantive criminal law is based upon a theory of punishing the vicious will. It postulates a free agent confronted with a choice between doing right and doing wrong and choosing freely to do wrong” (Pound, Introduction to Sayre, Cases on Criminal Law [1927], quoted in Morissette v United States, 342 US 246, 250, n 4).

. Kant, Philosophy of Law, at 13, 14, 28, 37 (Hastie trans 1887); cf., Bentham, Theory of Legislation, at 1-4 (Ogden ed 1931).

.Although "ignorantia legis” does not literally refer to mistake of law, the maxim is ordinarily understood, as we use it here, to include both ignorance and mistake of law (see, e.g., Jeffries, Legality, Vagueness, and the Construction of Penal Statutes, 71 Va L Rev 189, 208 [1985]; Note, Proposed Penal Law of New York, 64 Colum L Rev 1469, 1485 [1977]; Keedy, Ignorance and Mistake in the Criminal Law, 22 Harv L Rev 75, 81 [1908]).

.See, 2 Holdsworth, History of English Law, at 50-54, 258-259 (4th ed 1936); 3 Holdsworth, at 310-314, 371-375; United States v Barker, 514 F2d 208, 228 (Bazelon, Ch. J., concurring).

.The societal interests mentioned in the literature include: facilitating judicial administration, encouraging knowledge and obedience to law and preservation of integrity of legal norms (77 Colum L Rev 775, 787). Justice Holmes, for example, stressed society’s interests in deterrence, noting that acceptance of ignorance or mistake of law as a defense would encourage ignorance at the expense of the public good (see, Holmes, The Common Law, at 48 [1881]; Ellis v United States, 206 US 246, 257). John Austin justified "ignorantia legis” on the ground that if the defense were permitted, the courts would be confronted with questions about defendant’s mental state which they could not solve (Austin, Lectures on Jurisprudence, at 496-501 [4th ed 1873]; see, White, op. cit., 77 Colum L Rev, at 785, 786; People v O’Brien, 96 Cal 171, 176, 31 Pac 45, 47 [1892]). For a discussion of the societal interest in maintaining primacy of the law as a reason for the common-law maxim, see, Hall, General Principles of Criminal Law, at 382, 383 (2d ed 1960).

.Professor LaFave notes the unfairness of never recognizing ignorance or mistake of law as a defense to offenses which are purely regulatory: "The early criminal law was 'well integrated with the mores of the time’, so that 'a defendant’s mistake as to the content of the criminal law * * * would not ordinarily affect his moral guilt’ [n omitted]. But the vast network of regulatory offenses which make up a large part of today’s criminal law does not stem from the mores of the community, and so 'moral education no longer serves us as a guide as to what is prohibited’ [n omitted]. Under these circumstances, where one’s moral attitudes may not be relied upon to avoid the forbidden conduct, it may seem particularly severe for the law never to recognize ignorance or mistake of the criminal law as a defense. Moreover, some would question whether it is desirable to characterize as criminal an individual who has not demonstrated any degree of social dangerousness, that is, a person whose conduct is not anti-social because (i) he reasonably thought the conduct was not criminal, and (ii) the conduct is not by its nature immoral” (LaFave and Scott, Substantive Criminal Law § 5.1, at 587-588; emphasis in original). Dissatisfaction with the traditional common-law rule totally prohibiting a mistake of law defense may be seen in decisions in New York and other jurisdictions recognizing the defense in certain circumstances even in the absence of an authorizing statute (see, e.g., People v Weiss, 276 NY 384, 389 [permitting defense to negate an essential element of the People’s proof]; see also, United States v Barker, 514 F2d 208, 228 [Bazelon, Ch. J., concurring]; State v Cutter, 36 NJL 125; Ostrosky v State, 704 P2d 786 [Alaska Ct App]).

.By virtue of Penal Law § 265.20 (a) (1) (a) "peace officers”, as defined in the CPL 1.20, are expressly exempt from criminal liability under Penal Law § 265.02. CPL 1.20 incorporates the definition of "peace officer” in CPL 2.10, which includes "correction officers of any state correction facility or of any penal correctional institution”. Penal Law § 265.20 (a) was amended in 1980 to remove "peace officer” from (a) (1) (a) and to include "peace officer” in (a) (1) (c) (L 1980, ch 843, §§ 44, 45).

.The majority held that Penal Law § 265.20 (a) (1) (a) included only State correction officers. The dissenters agreed with Supreme Court that under the unambiguous language of CPL 2.10 defendant was a "peace officer” within the meaning of Penal Law § 265.20 (a) (1) (a) and exempt from prosecution under Penal Law § 265.02.

.It is suggested that Penal Law § 15.20 (2) (a) should be read as intended to apply when "it is determined that there was a mistake in the law itself. ” (Majority opn, at 390; emphasis in original.) Such interpretation is refuted by the language of the statute which provides a defense not when there is a "mistake in the law”, but, under particular circumstances, when the defendant is mistaken, i.e., when he acts "under a mistaken belief that [his conduct] does not, as a matter of law, constitute an offense” (Penal Law § 15.20 [2] [a]).

.In addition to permitting defenses based on ignorance of the law and reasonable reliance on official statements afterward determined to be invalid or erroneous, the New Jersey statute provides a defense, under the following broad provision, when: "(3) The actor otherwise diligently pursues all means available to ascertain the meaning and application of the offense to his conduct and honestly and in good faith concludes his conduct is not an offense in circumstances in which a law-abiding and prudent person would also so conclude” (NJ Stat Ann § 2C:2-4 [c] [3]).

.In Goetz (68 NY2d 96, 109), we noted of the Model Penal Code provision on justification: "While using the Model Penal Code provisions on justification as general guidelines, however, the drafters of the new Penal *401 Law did not simply adopt them verbatim.” This difference in wording— involving the addition of the word "reasonable” to Penal Law § 35.15 — we found to be a "crucial” distinction between the Model Penal Code and the Penal Law (id., at 110).

.Model Penal Code § 2.04 (3) (b) (i) states: "A belief that conduct does not legally constitute an offense is a defense to a prosecution for that offense based upon such conduct when: * * * (b) he acts in reasonable reliance upon an official statement of the law, afterward determined to be invalid or erroneous, contained in (i) a statute or other enactment”.

.New York’s experience has been similar. It is stated that "for over 20 years of this statute’s existence” (majority opn, at 388) no one has sought to predicate a defense on the statute. That history is significant not as demonstrating that Penal Law § 15.20 (2) does not plainly afford a mistake of law defense, as the majority suggests, but simply that, as in New Jersey, the enactment of the statutory defense has not resulted in an "infinite number of mistake of law defenses” (id., at 392).